661 So.2d 445 (1995)
CITY OF BATON ROUGE
v.
Eric WILLIAMS.
No. 95-KA-0308.
Supreme Court of Louisiana.
October 16, 1995.
*446 Richard P. Ieyoub, Attorney General, Veronica R. Jones, Carl J. Jackson, Lon Darrell Norris, Baton Rouge, for applicant.
Albert H. Town, III, Baton Rouge, for respondent.
*447 DOUCET, Judge.[1]
In this case, we consider whether a municipality may impose a penalty for a misdemeanor offense greater than that imposed by the state for the same offense.
On July 3, 1994, the Baton Rouge City Police issued a citation to Eric Williams, charging him with disturbing the peace by fistic encounter, in violation of city ordinance 13:103. On September 27, 1994, Williams was arraigned. The court set a trial date of November 3, 1994. On November 3, 1994, Williams withdrew his plea of not guilty and pled guilty as charged. A sentencing hearing was scheduled for December 19, 1994. However, on November 7, 1994, before the sentencing hearing, Williams filed a motion to quash. In his motion, Williams argued that the city ordinance under which he was charged is unconstitutional in that it imposed a penalty in excess of that imposed by the state for the same offense; that the sentence provided by the municipal ordinance is excessive under La.Const. art. I, § 20 because it is more severe than the sentence which may be imposed under state law, and; that the ordinance violates the equal protection clause because it subjects a defendant to the possibility of a different punishment for the same offense under state law. The city prosecutor objected to the hearing on the motion, arguing that it was not timely filed. The prosecutor asserted that a motion to quash could only be filed before trial. The trial court ruled that it was within its discretion to allow the hearing of the motion. On appeal the City of Baton Rouge (the City) does not contest the correctness of this ruling.
After a hearing, the trial court granted the motion and declared paragraph B of Metropolitan Ordinance 13:103 to be unconstitutional. The City appeals arguing that the ordinance violates no statutory or constitutional principles.
The penalty provision of the Baton Rouge City Ordinance Title 13:103, Disturbing the Peace, provides:
Whoever commits the crime of disturbing the peace shall be fined not more that five hundred dollars ($500.00) or imprisoned for not more that six (6) months, or both.
La.R.S. 14:103(A), the state's disturbing the peace statute includes the following penalty provision:
Whoever commits the crime of disturbing the peace shall be fined not more than one hundred dollars or imprisoned for not more than ninety days, or both.
The City argues that its home rule charter gives it the power to enact ordinances and provide for penalties not to exceed the maximum penalties allowable under state law for offenses falling within the jurisdiction of the Baton Rouge City Court. La.R.S. 13:1894 provides the limits of criminal jurisdiction of city courts:
The criminal jurisdiction of city courts is limited to the trial of offenses committed within their respective territorial jurisdictions which are not punishable by imprisonment at hard labor, including the trial of cases involving the violation of any city or parochial ordinance.
This limits the jurisdiction of the city courts to misdemeanors. See La.R.S. 14:2(4) and (5).
Municipalities, such as Baton Rouge, derive their power to enact ordinances from the state constitution. The City derives from its home rule charter its authority to enact ordinances prohibiting certain criminal conduct, and to punish violations of those ordinances. That charter was enacted under the authority of Article XIV, § 3(a), of the Louisiana Constitution of 1921. The Louisiana Constitution of 1974, art. VI, § 4 provides for the continuance of existing home rule charters, as follows:
Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this *448 constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions. (Emphasis added.)
La. Const. art. 6, §§ 5 and 7, on the other hand, impose additional restrictions on the power of immunity from state oversight granted to the remaining local governments which might assume home rule powers subsequent to the adoption of the constitution. La. Const. art. 6, § 5(E) states that:
A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution. (Emphasis added.)
In short, the 1974 constitution creates two classes of home rule governments with different levels of immunity from control by the state legislature: (1) preexisting home rule municipalities may exercise within their boundaries any legislative powers not in conflict with the 1974 state constitution; and (2) all other local governments may exercise home rule powers consistent with the constitution except when the exercise of such power is denied by general law. City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 93-0690 (La. 7/5/94), 640 So.2d 237.
In City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 640 So.2d at 248, this court explained the effect of the 1974 Constitution on municipalities with home rule charters preexisting its adoption:
Furthermore, Section 4 of Article VI cannot be construed without absurdity to permit the legislature to supersede the ordinances of the [City of New Orleans (CNO)] simply by enacting an inconsistent general state law; for this would reduce the immunity of the CNO to a level below that of the nonantecedent home rule governments whose valid ordinances are protected by Sections 5 and 7 of Article VI from reversal by the legislature except by general state laws that deny, rather than merely conflict with, their local laws. To interpret the Constitution as conferring on the CNO a power of immunity no greater [or weaker] than that attributed to the local governments which acquire home rule authority after the adoption of the 1974 Constitution would conflict with the clear intent of the drafters and ratifiers to grant all preexisting home rule governments a greater degree of autonomy.
As this court noted in Francis v. Morial, 455 So.2d 1168, 1171 (La.1984): "[A] home rule charter government possesses, in affairs of local concern, powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter."
The constitution provides only two specific limitations on the powers of a municipality under a home rule charter.
(A) Limitations. No local governmental subdivision shall (1) define and provide for the punishment of a felony; or (2) except as provided by law, enact an ordinance governing private or civil relationships.
(B) Police Power Not Abridged. Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
La. Const. art. 6, § 9.
Further, the legislature has provided the maximum penalty for commission of a misdemeanor. La.Code Crim.P. art. 779; La.R.S. 14:2(4) and (5). It is uncontested that the penalty provided by the City of Baton Rouge does not exceed this limit. There have been decisions by this court which invalidated municipal ordinances that provided greater penalties than the state statute punishing the same crime.[2] Those cases fall into two categories: those in which the municipalities' own home rule charter prohibited a penalty *449 greater than that set in a state statute for the same conduct; and, those in which there is a specific state statute which places a ceiling on the penalty a parish or municipality may exact for the prohibited conduct.
Since this case concerns a misdemeanor, the limitation provided in La.Const. art. 6, § 9(A) need not be considered. Additionally, there exists no statute which specifically places a ceiling on the penalty that a municipality may set for disturbing the peace. Therefore, we must consider:
1.) Whether this statute conflicts with state law in such a way as to abridge the state's police power?
2.) Whether enforcement of this statute would result in a violation of the Equal Protection Clause?
3.) Whether the City's home rule charter prohibits the enactment of an ordinance with a penalty greater than that set in a state statute for the same conduct?

POLICE POWER
Our first consideration is whether Title 13:103 constitutes an abridgment of the state's police power as prohibited by La. Const. art. 6, § 9(B). This court, in City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 640 So.2d 237, observed that La.Const. art. 6, § 9(B) is ambiguous. However, the court in that case found that La. Const. art. 6, § 9(B) was adopted as "... a principle of harmonizing the replete home rule powers granted local governments with a basic residuum of the state's power to initiate legislation and regulation necessary to protect and promote the vital interests of its people as a whole." Id. at 249.
It is a general principle of constitution law that a state cannot surrender, abdicate, or abridge its police power. However, while the police power of the state is inalienable, it may be delegated "to municipalities and other governmental subdivisions because these entities are part of the total government of the state." Further, "[t]he police power does not justify an interference with constitutional rights which is entirely out of proportion to any benefit redounding to the public." (Citations omitted.) Francis v. Morial, 455 So.2d at 1173.
This court has explained the effect of a home rule charter on the state's police power as follows:
Consequently, the constitutional grant of the home rule power to initiate legislation and the power of immunity from control of the legislature to a local government does not necessarily cause the state as a whole to sustain an abridgment of its police power. The total police power of the state is not diminished every time the legislature is constitutionally denied the right to substitute its legislative initiative for that of the home rule governments. A net loss in the exercise of the police power of the state would occur only when a local government's conflicting law or ordinance would prevent the state from initiating action through its legislative branch necessary to promote or protect the health, safety, welfare, or morality of the state as a whole. In other words, division and delegation of the police power within the state itself does not automatically cause its abridgment.
City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 640 So.2d at 250.
This court concluded that the principle of harmonization contained in La.Const. art. VI § 9(B) does not allow for an interpretation of that provision which would permit the legislature the unqualified power to withdraw, preempt, or overrule a local law that is consistent with the constitution and was enacted pursuant to a constitutionally maintained preexisting home rule charter. However, there may be circumstances in which the legislature will need to enact legislation which is necessary to protect a vital interest of the state as a whole, in spite of the fact that it conflicts with a valid local ordinance. In these circumstances the legislative action would be within the range of power reserved by the state. Id. at 251. Accordingly, this Court enunciated a method of analyzing possible abridgments of the state's police power:
[A] litigant claiming that a home rule municipality's local law abridges the police power of the state must show that the local law conflicts with an act of the state legislature *450 that is necessary to protect the vital interest of the state as a whole. To establish that the conflict actually exists, the litigant must show that the state statute and the ordinance are incompatible and cannot be effectuated in harmony. Further, to demonstrate that the state statute is "necessary" it must be shown that the protection of such state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights. [Citations omitted.]
Id.
To demonstrate that a home rule municipality's local law abridges the police power of the state, the defendant must show (1) that the local law conflicts with an act of the state legislature, and that (2) the state law is necessary to protect the vital interest of the state as a whole. Id.
Here, the parties agree that the penalties provided under the two laws are different. While this is arguably a conflict sufficient to impringe on the state's police power, it is doubtful that this conflict is sufficient to contravene state authority. The penalty provided by the ordinance is within the statutory limit set by the legislature for misdemeanors. As long as municipalities adhere to this limit, the state's law enforcement objectives are not defeated. Further, the City does not appear to have exceeded the authority to enact misdemeanor ordinances granted home rule charter municipalities under the constitution. Any conflict which would arise from the ability to enforce both the city and state ordinances is not great enough to cause a disruption in state law making effort.
However, despite any possible conflict, to prevail on an argument that an ordinance abridges the state's police power, the litigant must show that the primacy of the state law is vital to the interests of the state as a whole. The constitution has clearly delineated the state's vital interest in defining and providing for the punishment of felonies. La. Const. art. 6 § 9. Just as clearly, the constitution fails to make such a provision concerning misdemeanors. We infer, from this failure to speak, that state law misdemeanors may be duplicated and penalties set without abridgment of the state's police power as long as the penalty remains within the state's maximum allowable range of penalties for misdemeanors. If the state did not mean to allow some degree of discretion on the part of municipalities, it would not have granted them the power to enact misdemeanor ordinances and would have delineated more specifically the limits of acceptable penalties.
Furthermore, even if a litigant shows a vital interest to the state as a whole, to demonstrate that the state statute is necessary, it must be shown that the protection of the state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights. Id.
The constitution, in providing for home rule charters, has delegated a part of its police power to municipalities. This delegation of power includes the power to provide penalties for misdemeanors within the limits provided by state law. The constitution has given the City the power to enact Title 13:103, and the limits imposed on the city court jurisdiction have appropriately limited the range of punishment for the offense created. When a municipality enacts an ordinance within the statutorily acceptable limits for penalties, state authority is not contravened. Furthermore, given the City's constitutional status, the higher penalty provided by the municipal ordinance does not constitute an abridgement of the state's police power. Williams has shown at most that a conflict exists. He has not shown that it is in the vital interest of the state as a whole that the penalty provision of the local ordinance not exceed the penalty provided by state law for the same conduct, where the local penalty does not exceed the maximum penalty allowable for a misdemeanor.

EQUAL PROTECTION
On appeal, Williams further argues that enforcement of the ordinance constitutes a violation of equal protection because it could subject an individual to different penalties for the same offense depending on whether he was charged under the city or state law.
La. Const. art. 1, Sec. 3 states that:

*451 No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case punishment for crime.
This court in State v. Brown, 94-1290 (La. 1/17/95), 648 So.2d 872 explained the ambit of the equal protection clause:
The state and federal constitutional guarantees of equal protection mandate that state laws affect alike all persons and interests similarly situated. Detraz v. Fontana, 416 So.2d 1291 (La.1982); U.S.C.A. Const.Amend. 14; LSA-Const. Art. 1 Sec. 3 (1974).
As stated in Grider v. Adm'r, Dept. of Employment Sec., 564 So.2d 751 (La.App. 2d Cir.1990) (citing Sibley v. Board of Sup'rs, 477 So.2d 1094 (La.1985))
[w]hen a state law does not classify individuals by race, religion, birth, age, sex, culture, physical condition, or political ideas, but does so on any other basis, Art. 1 Sec. 3 of the Louisiana Constitution commands the court to decline the enforcement of the statute whenever a member of the disadvantaged class shows that the classification does not suitably further any appropriate state interest.
Thus, absent any suspect or intermediate classifications under the equal protection analysis, the defendants must show that the legislative classification is not rationally related to a legitimate state purpose.
Id. at 876.
Because Williams has not claimed that the difference in treatment springs from his membership in a suspect class, but from the fact that the laws set forth different penalties for the same crime which are equally applicable to an individual, the rational basis test is applicable in this case.
Under the Louisiana constitution, municipalities have the power to enact ordinances to regulate conduct within their boundaries. La. Const. art. VI, §§ 4, 5. Because situations are different from city to city, the constitution and the legislature have given municipalities some leeway in exacting the penalties they deem appropriate. Because it is conceivable that the state and municipalities can have different and equally legitimate policy objectives, there is a rational basis for allowing a city to set different penalties from those contained in identical state law.
The United States Supreme Court has held that where an act violates more than one criminal statute, the government may prosecute under either provision and not run afoul of the equal protection clause, if the statutes do not discriminate against any class of individuals. United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). In Batchelder, the Court upheld a defendant's conviction under a federal statute even though there was a similar state statute prohibiting the same act and assigning a lesser penalty. The court in Batchelder stated that:
[T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection for Due Process Clause.
Id. 442 U.S. at 114, 99 S.Ct. at 2205.
As a result, we find that a rational basis exists for allowing different penalty provisions for identical conduct under the state law and the local ordinance. Consequently, we find no equal protection violation resulting from the accused's exposure to different penalties under state and municipal statutes.

*452 LIMITATIONS UNDER BATON ROUGE'S HOME RULE CHARTER
Finally, we must consider whether Baton Rouge's home rule charter, by its own terms, prohibits enactment of a statute with a penalty greater than that of its state law counterpart.
The Plan of Government for the City of Baton Rouge § 3.03 provides that:
For the purpose of carrying out the powers and duties conferred or imposed on the Metropolitan Council, such Council shall have the power, whenever it deems it necessary, ... and to provide penalties for the violation of any ordinance or regulation, which shall not exceed the maximum penalties allowable under the Laws of the State of Louisiana for offenses which fall within the jurisdiction of the Baton Rouge City Court.
By this provision, the City reserves to itself the right to provide penalties not to exceed the jurisdictional limit set by the state for city courts. Where this court has recognized that a municipality could not enact ordinances with penalties greater than that provided by a specific state law, the limiting language has been specific. In McAllister v. City of New Orleans, 255 La. 405, 231 So.2d 368 (1970), the charter provided that its ordinances "shall not directly conflict with the provisions of any state laws on the same subject." Further, there existed a state statute specifically limiting the penalty which municipalities could adopt in connection with its vagrancy ordinances. In Town of Waterproof v. Towles, 180 La. 168, 156 So. 211 (1934), the municipality was governed by an act which prohibited it from punishing violations of ordinances by fines greater than $100 or imprisonment exceeding 30 days.
Under the provisions of the City's home rule charter, the penalty provided by Baton Rouge City Ordinance Title 13:103 must fall within the jurisdictional limit set by state law for city courts. The statutes defining the jurisdiction of city courts make it clear that all prosecutions must be tried without a jury. A city court cannot constitutionally sentence a defendant to a term of imprisonment of more than six months without hard labor, or a fine of more than $1000. See La.R.S. 13:1895; La.Code Crim.P. art. 779; State v. Bosworth, 373 So.2d 152 (La.1979); State v. Hebert, 543 So.2d 637 (La.App. 1 Cir.1989). City of Baton Rouge v. Ross, 94-0695 (La. 4/28/95), 654 So.2d 1311.
Baton Rouge city ordinance title 13:103(b) provides a penalty of a fine of not more than $500.00 and/or imprisonment for not more than six months. Because the penalty provided by Baton Rouge City Ordinance Title 13:103 does not exceed the jurisdictional limit set for city courts by the laws of the State of Louisiana, it does not violate Baton Rouge's home rule charter.

CONCLUSION
Baton Rouge city ordinance title 13:103 has not been shown to constitute an abridgement of the police power of the State of Louisiana. Nor does it violate the constitutional guarantee of equal protection. The penalty provided thereunder, additionally, does not exceed the limit set by the home rule charter of the City of Baton Rouge. Accordingly, the judgment of the City Court for the City of Baton Rouge is reversed. This case is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Judge Ned E. Doucet, Jr., Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J. not on panel. Rule IV, Part 2, § 3.
[2] See McAllister v. City of New Orleans, 255 La. 405, 231 So.2d 368 (1970) and Town of Waterproof v. Towles, 180 La. 168, 156 So. 211 (1934).