JiPLOTKIN, Judge.
The City of New Orleans and the Vieux Carre Commission bring this appeal to contest the trial court’s granting of the peremptory exception of no cause of action filed by the Louisiana State Museum, a division of the State of Louisiana. The appeal raises the novel questions of whether or not the Vieux Carre Commission has jurisdiction over state-owned buildings within the Vieux Carre section of New Orleans and, if so, whether requiring the State to obtain a permit before altering the exterior of state-owned buildings abridges the State’s police power. We hold that the Vieux Carre Commission has jurisdiction over state-owned buildings within the Vieux Carre and that requiring the State to comply with its permit procedures does not abridge the State’s police power.

FACTS AND PROCEDURAL HISTORY:

|2On November 17, 1995, a letter was written by Director, James Sefcik, on behalf of the Louisiana State Museum (LSM), to Marc Cooper, director of the Vieux Carre Commission (VCC). As a “courtesy,” the Board of the LSM was informing the VCC of its intent to construct a fence in the Cabildo’s arcade in order to prevent undesirables from entering the arcade at night. No action was taken to construct the fence until May 5, 1997, when the Tammany Contracting Company contacted the VCC to apply for a permit to construct the fence at the Cabildo. Shortly thereafter, the Architectural Committee, a sub-group of the VCC, voted to deny permission to construct the proposed fence. Regardless, the LSM promptly notified the VCC of its intent to construct the fence without a permit. On May 20,1997, the VCC voted to postpone any reconsideration of the Architectural Committee’s decision denying the permit to allow legal counsel to seek a judicial determination of the matter. The VCC alleges that the LSM agreed verbally not to construct the fence until the legal dispute was resolved by the courts. The LSM denies ever making such an agreement.
On June 1, 1997, Mr. Sefcik telephoned Mr. Cooper and advised him that the LSM would commence construction of the proposed fence that day, and he would have State Police present to prevent “interference.” However, later that day, the LSM’s chairman, Ralph Lupin, telephoned Mr. Cooper and informed him that a letter was being sent to the VCC stating that the LSM would begin construction in two weeks, on or about June 15, 1997. On June 4, 1997, the Tammany Contracting Company notified the VCC of its intentions to immediately begin the first phase of constructing the fence at the Cabil-do. A stop work order was issued by Mr. Cooper on behalf'of the VCC on the same day.
On the next day, June 5, 1997, plaintiff filed a petition for injunctive relief and an application for a temporary restraining order which were granted. On June jalO, 1997, a petition was filed by plaintiff for a preliminary and permanent injunction. On June 12, 1997, defendants filed an exception of no cause of action, claiming that the LSM was not subject to the jurisdiction of the VCC. On June 13, 1997, a hearing was held on both, plaintiffs application for a preliminary and permanent injunction, and defendant’s peremptory exception of no cause of action. The trial court maintained defendants’ exception and denied and dismissed plaintiffs petition.
*1011 Plaintiffs immediately filed for a suspen-sive appeal and a stay order pending resolution on appeal. Judge Dirosa granted the appeal but denied the stay order. Plaintiff sought writs in this Court twice, on June 13, 1997 and on June 23, 1997, seeking a restraining order pending resolution of this issue. We denied both applications, the first for failure to comply with our rules of court, and the second because plaintiff has an adequate remedy on appeal. Also, in our second writ, we warned the State that while they were permitted to erect the fence pending the appeal, it may have to be removed if the trial court’s judgment was reversed. On July 8, 1997, defendants proceeded "with construction of the fence because of the continuous misconduct in the arcade of the Cabildo at night. On the same day, Plaintiffs filed a motion with the Louisiana Supreme Court for a restraining order. The application was denied on July 10,1997.[1] On August 1,1997, defendants filed a motion to have this case dismissed which was denied on August 14, 1997. At this time, the fence has been completely erected.

THE HISTORY OF THE VIEUX CARRE COMMISSION:

|4The Vieux Carre Commission was created by the City of New Orleans under the authority of a 1936 constitutional amendment. The amendment was adopted in recognition of the public interest in preserving the historical Vieux Carre. Thus, the result was Art. 14 § 22A of the 1921 Constitution. It states:
Creation; membership: The Commission Counsel of the City of New Orleans is hereby authorized to create and organize a Commission to be known as the Vieux Carre Commission, to be appointed by the Mayor of said City with the advice and consent of its Commission Counsel and to be composed of nine members ...
Purpose: The said Commission shall have for its purpose the preservation of such buildings in the Vieux Carre section of the City of New Orleans as, in the opinion of said Commission, shall be deemed to have architectural and historical value, and which buildings should be preserved for the benefit of the people of the City of New Orleans and the State of Louisiana, and to that end the Commission shall be ■given such powers and duties as the Commission Council of the City of New Orleans shall deem fit and necessary.
Vieux Carre section defined. The Vieux Carre Section of the City of New Orleans is hereby defined to comprise all that area within the City Limits of New Orleans contained within the following boundaries: The River, Uptown side of Esplanade Avenue, the River side of Rampart Street, and the lower side of Iberville Street.
Buildings; tax exemption; preservation: The Commission Council of the City of New Orleans is authorized to exempt such buildings and other structures, as may be designated by the said Vieux Carre Commission as having historical and architectural value, ...
Buildings; acquisition: The preservation of the buildings in the Vieux Carre section of New Orleans having architectural and historical value is hereby declared to be a public purpose and the City of New Orleans is hereby authorized to acquire by purchase or expropriation or otherwise, such buildings and other structures in that section of the City of New Orleans, as the said Vieux Carre Commission may recommend to the Commission Council.
| sDuties of commission: Hereafter and for the public welfare in order that the quaint and distinctive character of the Vieux Carre section of the City of New Orleans may not be injuriously affected, and in order that the value of the community of those buildings having architectural and historical worth may not be impaired, and in order that a reasonable degree of control may be exercised over the architecture of private and semi-public buildings erected on or abutting the public streets of *1012 said Vieux Carre section, whenever any application is made for a permit for the erection of any new building or whenever any application is made for a permit for alterations or additions to any existing building, any portion of which is to front on any public street in the Vieux Carre section, the plans therefor, so far as they relate to the appearance, color, texture of materials and architectural design of the exterior thereof shall be submitted, by the owner, to the Vieux Carre Commission and the said Commission shall report promptly to the Commission Council its recommendation and the said Commission Council shall take such action as shall, in its judgment, affect reasonable compliance with such recommendations, or to prevent any violation thereof.
Under the authority of this amendment, the City of New Orleans created the Vieux Carre Commission through Ordinance Number 14,-538 CCS on March 3, 1937. The ordinance retained the language used in the amendment. In addition, the New Orleans Charter, Chapter 7, entitled “Vieux Carre Commission” also covers the VCC. It lists the duties of the VCC as follows:
The Commission shall:
(1) Preserve those buildings in the Vieux Carre section of the City as defined by the Constitution, having an historical or architectural value.
Home Rule Charter of the City of New Orleans, § 5-702.
Also, the New Orleans Code provides for guidance regarding the VCC relating to its jurisdiction. It states in § 166:35, in pertinent part:
Before the commencement of any work in the erection of any new building or in the alteration or addition to, or'painting or repainting or demolishing of any existing building, where any portion of the exterior of the building is in the Vieux Carre section, application by the owner for a permit therefor shall be made to the Vieux hCarre Commission ... so far as they relate to the proposed appearance, color, texture of materials and architectural design of the exterior, including the front, sides, rear and roof of such building, alteration or addition or of any out building, party wall, courtyard, fence or other dependency thereof, (emphasis added).
Code of the City of New Orleans, § 166-35.
In 1974, Louisiana adopted its present constitution. Any articles of the Constitution of 1921 that were not specifically retained, were superseded by the Constitution of 1974. Here, Art. 6, § 17 of the 1974 Constitution specifically retains constitutional authority for historic preservation commissions, such as the VCC:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts-to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
Thus, under the above provision, Art. 14, § 22A of 1921 Constitution was specifically retained.[2] There is no question that the Vieux Carre Commission is a constitutionally sanctioned government entity. There is also no question that the list of appurtenances for which a permit is necessary includes the design and construction of fences. Yet, the question remains whether or not state-owned ^buildings in the Vieux Carre are subject to inclusion within the jurisdiction of the VCC.
There is early case law interpreting the scope of jurisdiction of the VCC. While there are no cases decreeing that state-owned buildings located within the Vieux Carre are encompassed within the domain of the VCC, the courts have universally found that Art. *1013 14, § 22A applies to “any building” in the Vieux Carre due to the need for uniformity to retain the beauty of the Vieux Carre section as a whole. Vieux Carre Property Owners & Associates, Inc. v. City of New Orleans, 246 La. 788, 167 So.2d 367 (1964). The question presented in Vieux Carre Property Owners was whether the constitutional vel non of an ordinance of the City of New Orleans exempting certain defined areas of the Vieux Carre from regulations was constitutional. The trial court declared the ordinance unconstitutional and a direct appeal followed. The purpose of the exemption was to exclude commercial entities from the reach of the VCC. The Supreme Court agreed with the trial court and declared the ordinance unconstitutional:
“The language we have quoted simply means that, in the Vieux Carre section as a whole, any building abutting on any public street which is sought to be altered or added to shall be subject to the “reasonable control” of the City and the commission.”
Id. at 372-73. The above passage from that ease illustrates two key points. First, the VCC ordinance encompasses “any building.” The court continuously refers to the buildings of the Vieux Carre and at no point does it mention that public buildings are not included under the powers of the VCC. Also, and more importantly, defendants in that case argued that the language, “architectural and historical value” exempted them from the mandates of the statute because the buildings in question possessed neither architectural, nor historical value. However, the court stated that the VCC ordinance must be read as a |8whole, and in so doing, not only were the buildings with architectural and historical value included, but “any building” in the Vieux Carre was included. As pertains to our case, therefore, we have been instructed to read the VCC ordinance as a whole, and not focus on the individual words.
Also, in City of New Orleans v. Impastato, 198 La. 206, 3 So.2d 559 (1941), the Supreme Court continuously notes that the jurisdiction of the VCC encompasses “any building.” It states that it believes the clear language of the provision gives the VCC “full and com-píete” authority to regulate “any building situated in the Vieux Carre section which fronts on a public street.” Id. at 561. Also, there is language in City of New Orleans v. Pergament, 198 La. 852, 5 So.2d 129 (1941) that suggests the ordinance encompasses all the buildings of the Vieux Carre. The court states in that case, “The purpose of the ordinance is not only to preserve the old buildings themselves, but to preserve the antiquity of the whole French and Spanish quarter, the tout ensemble, so to speak, by defending this relic against iconoclasm or vandalism.” Id. at 131. The court further states the protection of the Vieux Carre is within the public interest and is therefore, encompassed by the city’s police power. See City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798 (1953). However, while these cases provide some guidance, they are distinct from the instant situation. None of them specifically address if state-owned buildings located within the boundaries of the Vieux Carre are under the authority of the VCC. Thus, while the cases use the phrase “any building,” the courts were never asked to decide this issue.
Nonetheless, this Court notes that the specific language of the amendment must be read in the context of the whole amendment as much as possible to focus on and interpret the intention of the drafters to provide for unvarying application. Succession of Lauga, 624 So.2d 1156, 1166 (La.1993), citing, Antoine v. Consolidated-Vultee Aircraft Corp., 217 La. 251, 46 So.2d 260 (1950). Thus, the single reference to “private and semi-public buildings” must be read in the context of the purpose of the amendment and subsequent ordinance. The purpose of the VCC ordinance is to provide for the preservation of the Vieux Carre as a whole, thus evincing a need for uniformity. Thus, we believe the language, “private and semi-public buildings” was meant to specifically include private and semi-public buildings, not to tacitly exclude public buildings. Moreover, this amendment was promulgated at a time when government interference with private property was much less prevalent than today, hence the need to clearly include private and semi-public buildings. Furthermore, the New Orleans Charter and the New Orleans Code refer to “all buildings” and *1014 “buildings.” Neither of them allude to “private and semi-public buildings.” Since the Code and the Charter are components of the regulatory scheme of the VCC, it is significant that no distinction is made. Once again, this shows an intent to include all buildings, whether public or private.
Thus, it is the finding of this Court that the authority of the Vieux Carre Commission extends to buildings situated within the Vieux Carre that are owned and operated by the State. However, this does not end our inquiry. We must determine if this authority abridges the State’s police power.
THE STATE’S POLICE POWER AND HOME RULE ENTITIES:
The State adamantly believes if the VCC ordinance is applied to the state-owned buildings of the Vieux Carre, its police power will be abridged. There has been much recent jurisprudence regarding the relationship between the State and municipalities or parishes with home rule charters. The constitution provides a lipdistinction between pre-1974 home rule charters and post-1974 home rule charters. The pertinent provisions of Article 6 of the 1974 Constitution are as follows:
§ 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect ... Except as inconsistent with this constitution, each local government subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions and duties in effect when this constitution is adopted ...
§ 5. (A) Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section ...
§ 6 The legislature shall enact no law the effect of which changes, or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
Most importantly, these constitutional provisions have been interpreted to mean that home rule charter parishes and cities with pre-1974 charters are granted a very wide range of powers, whereas cities and parishes with post-1974 charters are subject to more restrictions. Yet overall, the supreme court has afforded all entities with home rule charters great latitude to decide their own affairs. New Orleans’ home rule charter was promulgated in 1954; as such, it receives the level of constitutional protection furnished pre-1974 local governments. Also, New Orleans’ charter grants the city the widest range of autonomy allowed a home rule government. See Home Rule Charter of the City of New Orleans, § 2-101.
In City of New Orleans v. Board of Comm’rs of the New Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237, the Orleans Levee District (OLD) began construction of a marina and related developments for commercial profit on state-owned land inside the City of New Orleans without complying with New Orleans’ zoning and building ordinances. The City of New Orleans (CNO) | nbrought suit against the OLD for a declaratory judgment and an injunction to restrain the OLD’s violation of the ordinances. The supreme court granted certiorari to decide whether the OLD’s enabling acts prevent the CNO from applying and enforcing the zoning and building ordinances adopted pursuant to its home rule charter powers. The supreme court concluded that they do not.
Notably, the court in that case rejected “Dillon’s rule.” Dillon’s rule was the national and Louisiana standard established to decide issues of “home rule.” It embraced the idea that the State could supersede “home rule” ordinances through general legislation. Now, home rule legislation can only be superseded in limited circumstances, depending on whether the home rule entity has a pre or post-1974 home rule charter. Preexisting home rule municipalities and parishes are free of state interference when exercising within their charter boundaries and not in conflict with the state constitution. Post-1974 local governments must exercise their home rule powers in accordance with the constitution and are superseded when the state’s general law specifically denies local governments a certain power.
*1015 In City of New Orleans, the court explained that New Orleans’ home rule powers include the power to initiate local zoning ordinances so long as they are consistent with the constitution. Also, the court concludes that the CNO home rule charter includes the power of immunity. This denies the State legislature the authority to withdraw, preempt, or deny the CNO’s right to initiate legislation, such as zoning. Therefore, the court concluded that the CNO’s powers of initiation and immunity do not necessarily abridge the police power of the state.
The court then discussed the CNO home rule charter as it relates to the 1974 Constitution. It notes that the 1974 Constitution specifically authorizes local governments to adopt regulations for zoning and historical preservation. Thus, the court concluded that the CNO home rule powers include the authority to adopt and |i2enforce zoning and building ordinances within the city boundaries. Id. at 245.lt also stated that the “enactment and enforcement of zoning and building ordinances to regulate (3)27 use of land within the city does not abridge the police power of the state.” Id. at 249. The court went further and found that when the State violates any zoning or building ordinance, the CNO may take appropriate action to remedy the situation. Id. at 253. Most importantly, the court promulgated the test needed to decide cases between pre-1974 local governments and the State regarding which law should prevail:
A litigant claiming that a home rule municipality’s local law abridges the police power of the state must show that the local law conflicts with an act of the state legislature that is necessary to protect the vital interest of the state as a whole. To establish that the conflict actually exists, the litigant must show that the state statute and the ordinance are incompatible and cannot be effectuated in harmony. Further, to demonstrate that the state statute is “necessary” it must be shown that the protection of such state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights.
Id. at 252.
Another case that explored municipal powers was City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445. In that ease, Eric Williams was arrested for disturbing the peace and pled guilty to a city ordinance, but also filed a motion to quash on the ground that the ordinance was unconstitutional because it imposed a penalty greater than the state penalty for the same offense. The supreme court held that a municipality may provide a penalty for a misdemeanor greater than the penalty provided by the state for the same crime. The court specifically noted that the constitution provides specific limitations on the powers of a municipality operating under a home rule charter. One is that the police power is not to be abridged, and the other is that no home rule charter shall | ^provide for punishment of a felony or govern private or civil relationships. Id., citing, La. Const. art. 6 § 9. The Court in that case reiterated the test enunciated in City of New Orleans and adopted its reasoning. Williams, 661 So.2d at 449-450. Thus, the Williams case solidifies that the supreme court has reversed its previous position and no longer applies Dillon’s Rule, but rather grants home rule governments broad powers of initiation and immunity.
Also, in St. Charles Gaming Company, Inc. v. Riverboat Gaming Commission, 94-2697 (La.1/17/95), 648 So.2d 1310, the Supreme Court in a per curiam relied upon the analysis of City of New Orleans regarding the proper interpretation to be given home rule charters. The question presented was whether a St. Charles Parish zoning ordinance, which restricts riverboat gaming activity within the parish to locations on batture to be specifically designated by subsequent ordinances, is invalid because it violates the state constitution and laws. The supreme court held that the parish zoning ordinance is not unconstitutional or unlawful. What is most important about this case is that St. Charles Parish is a post-1974 home rule parish, meaning that it is not given as much leeway as the City of New Orleans. However, the supreme court *1016 found that the local ordinance was not an abridgement of the state’s police power even though it essentially thwarted legislative efforts by the State.
The ordinance at issue in that case was enacted after the Louisiana Riverboat Gaming Commission awarded the St. Charles Gaming Company a Certificate of Preliminary Approval to berth and conduct gaming operations at a site located in St. Charles Parish. However, the parish subsequently enacted the ordinance which frustrated efforts of the St. Charles Gaming Company to berth in St. Charles. The trial court found the local ordinance unconstitutional as an abridgement of the state’s police power. It also found it unconstitutional because the drafters of the |i4ordinance inadvertently used the word “gambling” instead of “gaming” and “gambling” is illegal in Louisiana. But, the supreme court read the ordinance as a whole and decided that the drafters unintentionally used the word “gambling” where they must have meant “gaming,” thus “the legislative intent of the ordinance clearly is to confine legal riverboat gaming, and not illegal gambling, to a specific district within the parish.”[3] Id at 1315.
The court reconciles any apparent conflict between the Parish zoning ordinance seeking to limit the areas in which there can be gaming and the State statute prohibiting the “regulation” of gaming operations by local governments by noting that the statute does not specifically deny local governments the power to zone relative to gaming activities. Id As mentioned above, in order to supersede a posW974 home rule charter ordinance, the state legislature must specifically deny the local government the power to act. The court went further, deciding whether a state statute regulating gaming operations was incompatible with the local zoning ordinance. The court found that the ordinance and the statute were not incompatible because they could be effectuated in harmony. The state law authorizes, licenses, and controls gaming activities, while the local ordinance regulates zoning as it pertains to gaming activities. Id at 1317. Even though the ordinance hindered the efforts of the State’s licensee, the ordinance was not found unconstitutional.
Now, the City of New Orleans test must be applied to our case. First, the State argues that under City of New Orleans, it has “that residuum of the police power” which the City of New Orleans is infringing. City of New Orleans, 640 So.2d at 251. Specifically, the State argues that preserving and protecting one of the most important state and national treasures, the Cabildo, is the very essence of the police power. There is no doubt that the Cabildo is quite possibly the most important structure in Louisiana, architecturally and historically, thus it is a vital interest of the state. As a vital interest of the state, the legislature enacted La. R.S. 25:341 et seq. to regulate the museums comprising the Louisiana State Museum. The relevant provision reads in pertinent part:
R.S. § 25:342:
(3) (a) The office of the state museum, subject to the provisions of R.S. 36:909, shall have custody of and shall administer, manage, operate, maintain, and preserve:
(i) The buildings, collections, and exhibitions of the Louisiana State Museum complex located in the city of New Orleans, including but not limited to the Cabildo, the Presbytere, the Lower Pontalba Building, the Jackson House, the Creole House, the old State Arsenal, Madame John’s Legacy, and the Old United States Mint in New Orleans.
(ii) Other museums hereafter established under jurisdiction of the offices.
Plainly, the Louisiana legislature created the LSM Board to maintain and preserve the state museums. For the State to prevail, we must find that this statute and the VCC ordinance are wholly incompatible.
The primary function of the LSM Board is to collect, preserve and exhibit art relative to *1017 the history and culture of Louisiana. See La. R.S. 25:341. Notably, there is no express grant of power or authority to perform construction or alterations to the exterior of the building, nor are local governments specifically denied any specific rights or powers as pertain to state museums. La. R.S. 25:341 et seq. The State argues in its brief that the fence is really “interior” and not “exterior” because it is actually inserted within the columns of the Cabildo. Noting that the original columns of the building have previously been | ^covered with plaster, the State claims that the original brickwork of the Cabildo which the VCC seeks to preserve has already been concealed. Thus, the State asserts, the fence, which is attached to the columns of the archway, is actually located in the “interior” portion of the building. There is no merit to the state’s attempt to characterize the fence as affecting only the interior of the Cabildo. While small sections of the fence may be fitted “within” the columns, the majority of the fence is on the “exterior.” The State’s argument demonstrates its awareness that a fence (or other structure) affecting only the interior of the Cabildo is outside the scope of jurisdiction of the VCC, and clearly within the sole jurisdiction of the LSM. On the contrary, it follows that the State is aware that the exterior of the building is subject to the VCC’s jurisdiction.[4]
The VCC’s main purpose is to protect the integrity of the Vieux Carre as a whole by ensuring that the quaint and historic nature of the Vieux Carre is preserved. It does so by requiring its prior approval of any projects affecting the exterior of any building situated in the Vieux Carre. The LSM is charged with maintaining and preserving the Cabildo and all the other state museums. It is entitled to choose exhibits and interior decorum as it sees fit. Thus, the VCC and the LSM have distinct powers and duties as relates to the Cabildo and, ergo, there is no conflict. Moreover, the LSM is permitted to alter the exterior of the Cabildo, subject to approval by the VCC. If the VCC does not approve of a project and the LSM believes the denial is arbitrary and capricious, there are administrative remedies available.
We find that the protection of the Cabildo is a vital interest of the State and as such, is encompassed within the State’s police power. However, we also find 117that the VCC ordinance and the LSM statute are not incompatible and can be effectuated in harmony, therefore, the police power of the state is not abridged and the VCC ordinance is not an unconstitutional usurpation of power.

CONCLUSION:

The VCC ordinance encompasses “any building” in the Vieux Carre. Although the older cases interpreting this provision make no mention of the private-public dichotomy, reading the legislation as a whole manifests an intention on the part of the original drafters to specifically include private- and semi-public buildings. Those now infamous words should not be read to specifically exclude public buildings.
Also, in order to overrule a provision of a pre-1974 home rule charter, the State must demonstrate that the local law is incompatible with a state statute and that the state law is necessary to protect the vital interest of the state, i.e. that the State is acting under its constitutionally protected police power. If the State meets this burden, the police power of the state is being abridged and as such, the local law is unconstitutional. In our case, the local law and the statute at issue are not incompatible, but rather can be effectuated in harmony.
For the foregoing reasons, the judgment of the trial court maintaining the State’s peremptory exception of no cause of action is reversed. The Vieux Carre Commission may seek any and all remedies that arose out of their inability to secure a preliminary injunction. The case is remanded to the trial court for further consideration not inconsistent with this opinion.

REVERSED AND REMANDED.

. Chief Justice Calogero concurred in order to "emphasize that the City presents a serious legal issue, which if not distinguishable, may be governed by this Court’s decision in City of New Orleans v. Board of Comm’rs of the New Orleans Levee Dist.; 93-0690 (La.7/5/94), 640 So.2d 237.” City of New Orleans v. Board of Directors of the Louisiana State Museum, 97-1817 (La.7/10/97), 696 So.2d 1020.

. Article 14, § 22A of the 1921 Constitution was enacted by Act No. 139, 1936. It states:
Proposing an amendment to Article XIV of the Constitution of the State of Louisiana, authorizing the Commission Council of the City of New Orleans to organize and create a Commission for the preservation of buildings and other structures having historical or architectural value in the Vieux Carre section of the City of New Orleans.

. The fact that the supreme court read the St. Charles ordinance "as a whole” to glean a general purpose and intent, and disregarded the word “gambling" demonstrates that the VCC ordinance is also to be read as a whole. As discussed, infra, when the VCC ordinance is read as a whole, it becomes apparent that the phrase, "private and semi-public” was used as a method of inclusion rather than a method of excluding state-owned buildings.

. Also, the record indicates that the LSM has applied for VCC permits in the past for work that affected the exterior of the Cabildo. This greatly strengthens the VCC’s argument that the Cabildo is subject to its jurisdiction.