Dear Ms. Jackson:
This office is in receipt of your opinion request of recent date wherein you ask several questions regarding a proposed Litter Court. Your first question involves Limits of Jurisdiction. You ask if justices of the peace and constables have jurisdiction in the unincorporated areas of the entire Parish regardless of the district in which they were elected. In other words, do constables and justices of the peace have authority over the violation of a municipal and/or a parish and or a state litter law which occurs within the boundaries of a municipality?
 LSA R.S. 13:2586 C (2) provides: A justice of the peace shall have concurrent jurisdiction over the litter violations occurring anywhere in the parish in which the court is situated, which are prohibited by R.S. 30:2531.2
or any ordinance of a parish governing body providing for litter abatement or control that provides that the trial for the violation of any such ordinance may be in a justice of the peace court. In addition, a constable may issue summons and serve subpoenas for such violations occurring anywhere in the parish in which his court is situated. However, the penalty that may be imposed by a justice of the peace in connection with a litter violation prohibited by R.S. 30:2531.2 shall be limited to the range of fines allowed by that Section.
The justice of the peace has jurisdiction anywhere in the parish regardless of where he is elected. "A justice of the peace may go outside his ward in prosecuting litter violators so long as he or she remains within the parish in which his or her ward is situated." La. Atty. Gen. Op. No. 96-66. This would include municipalities within the parish as well.
The second question regards Maximum Penalties in light of La. Atty. Gen. Op. No. 96-58 and City of Baton Rouge v. Eric Williams,661 So.2d 445, 447 (La 1995). Jefferson Parish has a pre-1974 Home Rule Charter. Jefferson Parish sees a conflict between the penalties stated in LSA. R.S. 33:1243 B and LSA R.S. 30:2531.2.
La. Atty. Gen. Op. No. 96-58 was suspended on February 8, 1996. In Williams, the Court states that "In short, the 1974 constitution creates two classes of home rule governments with different levels of immunity from control by the state legislature: (1) preexisting home rule municipalities may exercise within their boundaries any legislative powers not in conflict with the 1974 state constitution . . . ."
 "There have been decisions by this court which invalidated municipal ordinances that provided greater penalties than the state statute punishing the same crime. Those cases fall into two categories: those in which the municipalities' own home rule charter prohibited a penalty greater than that set in a state statute for the same conduct; and, those in which there is a specific state statute which places a ceiling on the penalty a parish or municipality may exact for the prohibited conduct." See Williams, supra pp. 448-449.
 "A net loss in the exercise of the police power of the state would occur only when a local government's conflicting law or ordinance would prevent the state from initiating action through its legislative branch necessary to promote or protect the health, safety, welfare, or morality of the state as a whole. . . . However, there may be circumstances in which the legislature will need to enact legislation which is necessary to protect a vital interest of the state as a whole, in spite of the fact that it conflicts with a valid local ordinance." See Williams, supra, pp. 449
In this case, the local ordinance and the state statute do conflict. Williams sets forth a test for the abridgement of the police power of the state. First, the local law conflicts with an act of the state legislature that is necessary to protect the vital interest of the state as a whole. Secondly, the state statute and the ordinance are incompatible and cannot be effectuated in harmony. Thirdly, the protection of the state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights, See Williams, supra, p. 445.
The Louisiana Litter Reduction and Public Action Commission[1]
was created to improve the appearance and safety of the state. Grants are given to communities which comply with the program's agenda. The program clearly intends to impact the state as whole and it does protect a vital interest of the state as a whole. There is no way that the ordinance and the state statute can exist in harmony. The state has an interest in consistency among program participants. To create consistency would not be detrimental to the home rule powers and rights of Jefferson Parish. Therefore, it would be an abridgement of the police power of the state to allow a conflict between the ordinance and LSA. R.S.30:2531.2.
 EQUAL PROTECTION ARGUMENT
 LSA Const. Art. 1 Sect. 3 states that: No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case punishment for crime.
In this case, the legislative classification must be rationally related to a legitimate state purpose. The statute involved, LSA R.S. 33:1243 B is a different statute from LSA. R.S. 30:2531.2. The Jefferson parish statute deals with ordinances in general whereas the state statute deals specifically with littering violations under the Louisiana Litter Reduction and Public Action Commission. One statute is general in nature and the other statute is specific in nature. Since the Jefferson Parish Council is seeking grant money from the Commission it is reasonable to conclude that they should follow the statutory guidelines fixed under the state statute. There is no rational basis for allowing different penalty provisions for identical conduct under the state law and the local ordinance.
You question whether a Justice of the Peace can assess a penalty in the ordinance that exceeds the maximum penalties under LSA. R. S. 30:2531.2. You also question whether the Justice of the Peace must include the option of community service in lieu of a fine. Your Board does not intend to institute a community service program because of limited resources.
LSA R.S. 13:2586 provides in part that: "The penalty that may be imposed by a justice of the peace in connection with a litter violation prohibited by R.S. 30:2531.2 shall be limited to the range of fines allowed by that Section."
LSA. R.S. 30:2531.2 D provides:
 Persons found liable under the provisions of this Section shall be assessed the following penalties: (1) For a first violation, such person shall be either fined fifty dollars, or given the option to perform eight hours of community service in a litter abatement work program in lieu of the assessed fifty dollar fine.
 (2) For a second and each subsequent violation, such person shall either be fined one hundred dollars or be given the option to perform eight hours of community service in a litter abatement work program in lieu of the one hundred dollar fine.
It is clear that the reading of the statute requires a litter abatement program. If the Parish wishes to start a Litter Court, it should comply with all of the state statutes that are applicable. This will assure unity throughout the state and compliance with the letter of the law.
You state that the Board is considering two methods of compensation to the justice of the peace: (1) a set amount per case heard without regard to the outcome or amount of the fine, or (2) a "sitting fee" for each hearing date regardless of the number and outcome of the cases heard on that date.
LSA R.S. 30:2531.2 states that:
 Persons found liable under the provisions of this section shall pay special court costs of fifty dollars in lieu of other costs of court and the special court costs shall be disbursed as follows:
 (1) Twenty dollars shall be paid to the judicial expense fund for that judicial district or to the justice of the peace or the city court as the case may be.
 (2) Twenty dollars shall be paid to the office of the district attorney, or to the constable or to the municipal prosecuting attorney, as the case may be.
 (3) Ten dollars shall be paid to the clerk of the district court, or to the justice of the peace or the city court, as the case may be.
The statute does not encompass any of the Board's proposed methods of compensation. The statute is clear on how the Justice of the Peace is to be paid.
Although this figure may appear less than the Board proposes, it is clearly the mandate of the law.
The Board is proposing that a constable who issues summons for a litter violation that is successfully prosecuted will be paid a portion of the court fees and a percentage of the fine collected for that violation. LSA R.S. 30:2531.2, supra, clearly states that the constable is to be paid twenty dollars. Since the fine is being assessed, it implies that the prosecution was successful. However the statute does not provide for a program such as the Board has suggested.
You inquire whether the Clerk of Court for the 24th Judicial District can be appointed as Clerk of the Litter Court. LSA. R.S.30:2531.2, supra, clearly states that $10.00, ten dollars can be paid to the Clerk of the district court. Therefore, the statute encompasses that the clerk of the district court may be the Clerk of the Litter Court as well.
The Board would like to charge more than $50.00 per case which is the special court costs in LSA R.S. 30:2531.2. The statute, supra, states in part that the special court costs will be in lieu of other costs of court. Therefore, there is no statutory authority by which to charge costs greater than $50.00.
You ask whether an additional $5.00 fine to the Louisiana Wildlife Fund will be considered as part of the base fine or included in the maximum fines that may be assessed under the Parish ordinance and or by a justice of the peace. The maximum fine proposed by the Board for the fourth and subsequent violations is $500.00. LSA R.S.30:2531.2 clearly states that for a second and subsequent violation, a person may be fined either one hundred dollars or be given the option to perform eight hours of community service in a litter abatement work program in lieu of the one hundred dollar fine. There is no authority to charge a $500.00 fine on the fourth violation.
 LSA R.S. 56:70.3 C (2) provides that "Notwithstanding any other provision of law to the contrary, in addition to any fine imposed under LSA. R.S. 30:2531 and 2531.1 or fine imposed pursuant to any parish or municipal ordinance prohibiting littering, an additional fine of five dollars is hereby imposed for each violation of said statutes or ordinances which results in a conviction, guilty plea, or plea of nolo contendere."
The statute clearly states that this fine is in addition to the littering fine. Therefore, the five dollars, ($5.00), should be collected and remitted to the state treasurer upon collection.
You ask whether the Litter Court should set its own schedule and follow the ordinary rules of procedure for justice of the peace hearings. This is acceptable provided that the justice of the peace follows the statutes relating to the Litter Court.
Thank you for your kind attention to this matter. If you have any questions, please do not hesitate to contact me at 1-800-351-4889 or (225) 342-3978.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ KORDICE M. DOUGLAS Assistant Attorney General
RPI/KMD
[1] LSA. R.S. 30:2521 Declaration of policy and public purpose
Recognizing that the need for the control and reduction of litter is an integral part of a statewide beautification program to enhance the tourist, recreational and economic development of the state, there is hereby created the Louisiana Litter Reduction and Public Action Commission and the litter reduction and public action section within the Department of Environmental Quality.