Dear Mr. Austin:
You have requested an opinion of the Attorney General relative to the legal propriety of a medical scholarship program (Program) initiated by Homer Memorial Hospital (Hospital). The Hospital is owned by the Town of Homer (Town) and is administered by a Board of Directors (Board) appointed by the governing authority of the Town. The Town operates under a Home Rule Charter enacted by Act No. 36 of 1876, and is governed by a Mayor and Board of Selectmen.
Attached to your request are copies of Town Ordinance No. 563 (Ordinance), Minutes of the Executive Committee of the Hospital dated July 8, 1991 (Minutes) and an amended medical scholarship agreement dated June 23, 1995, entered into between the Hospital and a medical student (Agreement). The Ordinance creates the Board and delegates the administration of the Hospital thereto. The Minutes reflect a motion which passed to authorize the Hospital to designate $5,000 per month to fund a maximum of five medical student scholarships.
Representatives of the Hospital and the Town have advised us that funding for these scholarships was derived from tax revenues transferred to the Hospital by a local hospital service district. This funding ceased and the Program was subsequently suspended several years ago. Several of the previously executed agreements continue to be in full force and effect. You initially ask whether the municipally-owned Hospital has the authority to establish and administer the Program.
As previously noted, the Homer Home Rule Charter (Charter) was created pursuant to Act No. 36 of 1876; therefore, it existed and was adopted prior to the effective date of the adoption the Louisiana Constitution of 1974. Accordingly, the Town may exercise within its boundaries all legislative powers which are not in conflict with the 1974 State Constitution. Article VI, Section 4 of the Louisiana Constitution of 1974 and City ofBaton Rouge v. Williams, 661 So.2d 445 (La. 1995).
Article II, Section 16 of the Charter provides, in pertinent part, the following:
 Sec. 16. Powers of mayor and selectmen specified
 No. 1. The mayor and selectmen shall have power to purchase and hold real estate and personal property, to purchase and hold real estate within the corporate limits, for all proper municipal purposes and for parks, cemeteries, hospitals. . . .
 * * *
 3rd. To make regulations to secure the general health of the municipality. . . . (Emphasis added.)
As can be gleaned from the above, the Town, by virtue of Article VI, Section 4 and its Charter, is vested with broad and sweeping powers and authority over its own affairs through its Mayor and Board of Selectmen. This authority extends to the ownership and operation of public hospitals. Attorney General Opinion Nos. 96-117, 92-84 and 84-749.
Opinion No. 96-117 specifically concludes that state law does not prohibit a municipality from creating a hospital board and delegating to that board the power and authority to operate the hospital. In the case at hand, while the Board is independently authorized to make expenditures for the normal day-to-day operations of the Hospital, the Town is nevertheless ultimately responsible for the Hospital and/or the actions of the Board.
As previously noted, the Program, was implemented by the Hospital's Executive Committee and Board on or about July 8, 1991. The Minutes clearly reflect that the Program was established pursuant to R.S. 46:1102. R.S. 46:1101 establishes a medical scholarship program and provides, in pertinent part, the following:
 § 1101. Parish hospitals and hospital service districts; medical scholarship programs; establishment, administration, funding
 A. The Board of commissioners of each parish hospital or each hospital service district, hereinafter referred to as the board or the board of commissioners, or, in the absence of a hospital district, the parish governing authority is authorized to establish and administer a medical scholarship program for the purpose of increasing the educational opportunities available to medical students who will practice family medicine in areas where physician care is limited or unavailable. Each board, or in its absence, each parish governing authority which establishes such a program, may award medical scholarships to residents or former residents of the hospital service district or parish, as the case may be, who otherwise qualify, who are admitted and engaged in the study of medicine at an accredited school of medicine located in the United States, or who are engaged in internship or residency programs within the United States and, who contract to practice family medicine in the district or parish, as provided in this Chapter. Each scholarship shall be awarded for the purpose of defraying the costs of tuition and other related expenses and cost for attendance at medical school, or for internship or residency. . . .
Section 1102 provides for the amount and number of scholarships as follows:
 § 1102. Scholarships; amount number
 Each board desiring to award scholarships shall establish a policy setting forth the maximum number and amount. Said policy may be amended by the board as necessary. The number and amount of each scholarship granted pursuant to this Chapter shall not exceed the number and amount set forth in the policy.
As you correctly note, the provisions of Section 1101, et seq., authorize the establishment and administration of medical scholarship programs by the boards of parish hospitals or hospital service districts. The fact that municipally-owned hospitals are not specifically enumerated in the above provisions does not, in our opinion, prohibit them from participation in such programs. In addition to the Constitution and Charter, we find support for our position in the Ordinance which provides, in pertinent part:
 SECTION IV. The Board of Directors shall be responsible for
employing and discharging all hospital personnel, establishing by-laws, rules and regulations relating to the admittance of patients, establishing charges for services rendered by the hospital, collecting accounts and any and all other duties and responsibilities that normally apply to the various board of directors of comparable hospitals within the State of Louisiana. (Emphasis added.)
As previously stated, funds used for the implementation of the Hospital's Program were comprised of local hospital service district tax revenues. It is our opinion that, included in the term "comparable hospitals within the State of Louisiana" are parish hospitals and/or hospital service districts enumerated in R.S. 46:1101, et seq. Consequently, the Hospital could implement the same program available to the hospitals referred to in that law.
We further opine that the Program can be examined in light of Article VII, Section 14 of the 1974 Louisiana Constitution. It provides, in pertinent part, the following:
 § 14. Donation, Loan, or Pledge of Public Credit
 Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds, was undertaken by this office in Attorney General Opinion No. 90-651. It opines that the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge or donation of public funds.
Paragraph (C) authorizes the State and its political subdivisions (i.e., the City through the Board) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City ofPort Allen v. Louisiana Risk Management, et al., 439 So.2d 399
(La. 1983) and Attorney General Opinion No. 90-651.
 In City of Port Allen, the Supreme Court held:
 The cases that do exist [under La. Const. Art. IV § 12
(1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. . . .
 * * *
 Section 14(C) does not help the state either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'". [Emphasis added.]
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty (i.e., authority) by the transferor to alienate its funds or property. See Beard-Poulan, Inc. v. Dept.of Highways, 362 F. Supp. 547 (W.D.La. 1973) and Town of Bruslyv. West Baton Rouge Parish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973). This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the transfer. Second, the expenditure must also be for a public purpose. Finally, the expenditure must result in a public benefit to the transferor proportionate to the cost (i.e., the amount transferred or expended). Attorney General Opinion Nos. 98-378, 97-471-A, 96-115, 95-81, 93-787, 93-164, 92-722, 92-127 and 90-651.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. With this in mind, we turn to your query and the Program at issue.
The initial issue to be determined regarding the Program is whether a valid legal duty or obligation exists for same. In this regard, we again note the broad and sweeping powers and authority granted to the Town by its Charter and our Constitution to provide for the health and welfare of its citizens. In carrying out these powers and rights, the Town adopted the Ordinance creating the Board and delegating to it the duties and responsibilities normally applicable to the boards of directors of comparable hospitals within the State. We are of the opinion that, included within these powers, duties and responsibilities, is the power to establish a medical scholarship program. Accordingly, it is the opinion of this office that the Program is based on the presence of a valid legal obligation or duty (i.e, authority), to wit: Article VI, Section 4, the Charter and the Ordinance. We turn now to the second requirement — that the expenditure be for a public purpose.
R.S. 46:1101 et seq., is one of several programs implemented by the Legislature to assist publicly owned hospitals, including hospital service districts, in an increasingly competitive market for hospital and health care services. Similar programs can be found at R.S. 46:1131 et seq. (nursing scholarship programs), 46:1151 et seq. (allied health professionals scholarships) and 46:1071 et seq. (programs for the enhanced ability to compete and contracts or joint ventures). Of particular interest is the statement of legislative findings and purpose contained in R.S. 46:1071 and 1077.
Section 1071 was enacted to assist hospital service districts to effectively compete in the market for hospital and health care services. The term "hospital service districts" is defined to include a municipally-owned hospital. It provides, in pertinent part, the following:
 § 1071. Legislative findings and purpose
 The Legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive that hospital and other health care providers are contracting to engage in economic joint ventures to offer integrated health care services to the public The Legislature finds that hospital service districts are presently at a competitive disadvantage. The Legislature hereby declares that the purpose of R.S. 46:1071-1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071-1076 shall be construed liberally.
Section 1077, authorizing the execution of contracts or joint ventures for hospital health services provides, in pertinent part, the following:
 § 1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in any joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person to offer, provide, promote, establish or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the Constitution of Louisiana. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contract shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the Constitution of Louisiana. (Emphasis added.)
As can be gleaned from the above, the Legislature has clearly and repeatedly expressed its intent that programs designed to enhance the ability of public hospitals to compete effectively in the health care market are presumed to be cooperative endeavors under Article VII, Section 14(C). We find of equal importance medical scholarship programs, the purpose of which are to increase the educational opportunities available to medical students who agree to practice medicine in areas where physician care is limited or unavailable. Accordingly, we find the Program in question clearly constitute a public purpose. We now turn to the final criterion — that the Program create a public benefit to the Hospital and the Town proportionate to its cost (i.e., the scholarships awarded).
Clearly, one cannot put a price on the value of the availability of quality health care and the individuals professionally trained to administer same. The Legislature obviously believed that quality health care should be available to all citizens of this State, especially in smaller communities where physician care would otherwise be limited or unavailable. While the benefit of the availability of such care is somewhat intangible, it is nevertheless substantive, and one of the most important contributions which government can make to the quality of life of its citizens. We therefore conclude that the financial assistance granted to medical students under the Program is not so disproportionate to the public benefit to be realized so as to render it unconstitutional.
Accordingly, it is the opinion of this office that the Town, through the Hospital Board, may implement the Program in question pursuant to Article VII, Section 14(C). We now turn to your second question, to wit: Can the Board implement the Program under the provisions and guidelines contained in R.S.46:1101-1112?
It is the opinion of this office that the Program established by the Board should conform to the provisions of R.S. 46:1101-1112. As previously noted, this law, including any restrictions contained therein, has been deemed by the Legislature to be an appropriate means of establishing a medical scholarship program for parishes and hospital service districts.
Your third question asks whether the Ordinance constitutes adequate authority for the Board to establish and administer the Program. We answer this question in the affirmative. As previously discussed, we believe the authority to establish the Program is found in Article VI, Section 4, the Charter and the Ordinance enacted pursuant thereto.
Your fourth question concerns the Agreement, itself, between the Hospital and the student. You specifically ask whether the Agreement violates Article VII, Section 14 to the extent it allows payment to the student after completing his or her medical training. As previously discussed, it is our opinion that the Hospital's Program should adhere to the legislative directives contained in R.S. 46:1101-1112. Any derogation from these requirements, including the payment to students after the completion of their medical training, is contrary to the statutory provisions pertaining to the medical scholarship program, and would be subject to constitutional challenge under Article VII, Section 14. We turn now to your fifth question, to wit: Are the Hospital Agreements subject to Louisiana State Bond Commission approval?
The statutory provision relevant to the resolution of your fifth question is found at R.S. 39:1410.60. It provides, in pertinent part, the following:
 § 1410.60. Approval of application; incurring of indebtedness
 No . . . municipality, public board, political or public corporation . . . created under or by the constitution and laws of the state shall have authority to borrow money, incur debt, or to issue bonds or other evidences of debt, or to levy taxes, or to pledge uncollected taxes or revenues for the payment thereof, where they are authorized by the constitution or laws of the state to do so, without the consent and approval of the State Bond Commission.
In Attorney General Opinion No. 94-452, this office extensively discussed the State's debt limitation laws. Therein, we concluded in pertinent part:
 It is the opinion of this office that for purposes of the debt limit calculation, a "debt obligation" must mean a bond, note, certificate of indebtedness or other written obligation for the repayment of borrowed money.
We are of the opinion that the Agreement presented for our review does not constitute an incurrence of indebtedness which would be subject to the approval of the State Bond Commission. Representatives of the State Bond Commission concur with our opinion.
With regard to your sixth and final question, you ask whether the Agreement subject to our review constitutes an employment contract and, if so, what statutory authority does the Hospital have to enter into such a contract. Town Ordinance No. 563 authorizes the Board to employ hospital personnel. The Agreement in question does not purport to employ the medical student. Rather, it constitutes a contract in furtherance of the medical scholarship Program patterned after R.S. 46:1101. Accordingly, it is our opinion that the Agreement does not constitute an employment contract.
As previously noted, the Program and the funding therefor was discontinued several years ago. In the event the Hospital desires to reinstate the Program, it should adhere to the guidelines and restrictions contained in R.S. 46:1101, et seq. Further, the Town may wish to request that remedial legislation be introduced to add municipally-owned hospitals to the medical scholarship legislation.
Finally, we have been advised by representatives of the Town and Hospital that some medical students/graduates are in default of obligations incurred under previously executed contracts. In such cases, it is the responsibility of the Town/Hospital to do everything within their power to secure the repayment of scholarship funds. Failure to do so would constitute a violation of Article VII, Sections 14 and 15 of the Louisiana Constitution of 1974.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/sfj *Page 1 
UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF
 CONTRACT FOR MEDICAL SCHOLARSHIP
BE IT KNOWN, that on this ______________ day of __________, 19__,
BEFORE ME, the undersigned Notary Public, personally came and appeared: and ___________________________________, who declared they are Chairman and Vice-Chairman, respectively, of the Board of Commissioners of __________________________________; that they are so authorized and do provide a medical scholarship to ____________________________________________________ in the amount of ___________________________________________, on behalf of the Board of Commissioners of _______________________________ pursuant to the provisions of La. R.S. 46:1101 through 46:1112, which provisions in parts pertinent are hereby incorporated and made a part hereof.
__________________________ personally came and appeared and declared that he/she is a citizen of the United States and a resident of the State of Louisiana; that he/she is admitted to or engaged in the study of medicine at ____________________________ School of Medicine, located *Page 2 
in _________________________________, or that he/she is engaged in an internship or residency program within the State of Louisiana; that in consideration for the medical scholarship granted to him/her by the Board of Commissioners of ___________________________________________, he/she promises to practice family medicine in an area designated by the Board of Commissioners where there is a shortage of physicians practicing family medicine, for a period of not less than three years, beginning at a time designated by the Board of Commissioners; and that he/she intends to use the medical scholarship for the purpose of defraying the costs of tuition and other related expenses and costs of attending school, or for internship or residency.
The Board of Commissioners and ________________________ further agree that if the recipient fails to comply fully with any condition of this contract or any provision of La. R.S.46:1112, the recipient shall remit to the Board of Commissioners that amount of scholarship awarded as the number of months that the recipient failed to comply with this condition bears to the number of months he/she was obliged to comply. Said amount shall be computed together with interest at the legal rate, such interest to be computed from the date on which the recipient completed professional training and active military service, if any. Such payment shall be completed within six years from date of which the scholarship shall begin to draw interest; that the permanent withdrawal or dismissal of a recipient from medical school, internship, or *Page 3 
residency shall forfeit immediately the right of the recipient to retain the scholarship; the scholarship shall begin to bear interest at that time, and repayment shall be made to the Board and completed within six years; that any recipient of a scholarship who fails to return to the area designated by the Board upon completion of medical training shall begin repayment of the scholarship, with interest, within one year after completion of medical training. Repayments shall be made to the Board and completed within six years; and that any obligation to comply with such contract shall be cancelled upon the death of the recipient, upon receipt of a certified copy of the death certificate by the Board, or upon the permanent and total disability of the recipient.
Thus done and signed before me, Notary on the date first mentioned above, in the parish and state aforesaid.
____________________________ _____________________________ CHAIRMAN RECIPIENT BOARD OF COMMISSIONERS
____________________________ VICE-CHAIRMAN BOARD OF COMMISSIONERS
 _________________________ NOTARY PUBLIC