742 So.2d 564 (1999)
MERRITT McDONALD CONSTRUCTION, INC.
v.
The PARISH OF EAST BATON ROUGE and The Greater Baton Rouge Airport District.
No. 98 CA 1032.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
Rehearing Denied October 7, 1999.
*566 Samuel R. Cicero, Baton Rouge, for Appellees The Parish of East Baton Rouge and The Greater Baton Rouge Airport District.
Steven B. Loeb, David C. Voss, Baton Rouge, for Intervenor-Appellee Interstate Design and Construction, Inc.
William C. Shockley, Douglas J. Cochran, Baton Rouge, for Appellant Merritt McDonald Construction, Inc.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
This is an appeal from a judgment denying appellant's, Merritt McDonald Construction, Inc.'s ("McDonald"), motion seeking a preliminary injunction to enjoin performance of contracts awarded to opposing bidders by appellees, The Parish of East Baton Rouge and The Greater Baton Rouge Airport District, and writ of mandamus ordering appellees to award the contracts to Merritt McDonald Construction, Inc. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
This action arose out of a bid dispute for three phases of a project at the Baton Rouge Metropolitan Airport ("Airport"). The Project, described as Airport Improvement Project No. 3-22-0006-32, State Project No. XXX-XX-XXXX, Residential Sound Reduction Program, Baton Rouge Metropolitan Airport, Greater Baton Rouge Airport District ("Project"), consists of residential sound reduction of homes in the vicinity of the Airport. The three phases in which the Project was let were Long Range Phase I, Supplemental Test Home Project, and Long Range Phase II.
Three firms submitted bids to perform all three phases of the project. Those firms were McDonald, Lipsky Enterprises, Inc. ("Lipsky"), and Interstate Design and Construction, Inc. ("Interstate"). Interstate submitted the low bid on Long Range Phase I, while Lipsky submitted the lowest bids on the Supplemental Test Home Project and Long Range Phase II. The East Baton Rouge Metro Council formally accepted the bids on Long Range Phase I and Supplemental Test Home Project on November 12, 1997. The Long Range Phase II bid was formally accepted on December 10, 1997.
Of the three bidding firms, only Mc-Donald possessed a residential contractor's license, pursuant to East Baton Rouge Parish Ordinance, Section 8:902. Consequently, McDonald filed a petition for injunction and writ of mandamus, seeking a preliminary injunction to enjoin performance of the project by Interstate and Lipsky and an order that the Metro Council award each of the contracts to Mc-Donald.
Hearing on the petition was held on January 20, 1998, after which the trial court denied McDonald's petition in open court for reasons orally assigned. In presenting its reasoning, the trial court found that the local licensure requirement was not included in the contract specifications. However, the court continued by finding that, even if the licensure requirement was included in the specifications, its provisions were inapplicable. The court's judgment, based upon these findings, was signed on January 26, 1998. During the course of the appeal, Interstate filed a motion to dismiss McDonald's appeal, as it relates to *567 the contract awarded for Long Range Phase I.

DISCUSSION

Motion to Dismiss the Appeal As Moot
Interstate has offered proof that it has completed work authorized under Long Range Phase I. Thus, Interstate contends, the injunctive relief prayed for by Mc-Donald's, relating to that phase of the Project, is no longer available. We do not agree.
It is true that this matter comes before the court as a summary proceeding seeking equitable remedies. However, this court has recognized that appeal delays often create a dilemma for unsuccessful bidders seeking injunctive relief under the Public Bid Law. Boh Bros. Construction Co., L.L.C. v. Department of Transportation and Development, 97-0168, p. 4 (La. App. 1st Cir.7/14/97), 698 So.2d 675, 677, writ denied, 97-2113 (La.11/21/97), 703 So.2d 1309.
Accordingly, this court has held that "an aggrieved bidder on a public works project who has timely filed a suit for injunctive relief may recover damages against a public entity." Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d 847, 852-853 (La.App. 1st Cir.1992), writ denied, 614 So.2d 82 (La.1993). Therefore, the underlying issue, the propriety of the contract let under Long Range Phase I, is not mooted by the unavailability of injunctive relief. See Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161, 1169 (La.1979); Boh Brothers, 97-0168 at 5, 698 So.2d at 677.

Applicability of Residential Contractor's Code
Appellant contends that the East Baton Rouge Parish ordinance requiring licensure of residential contractors invalidated the contracts that were awarded under the project at the heart of this case. In support of this argument, appellant offers two local ordinances. Section 8:902 of the East Baton Rouge Residential Contractor's Code provides, in part,:
Any person, firm, or corporation who as the primary contractor is required to obtain a building permit from the Department of Public Works and who engages in the building, construction, installation, rebuilding, remodeling or repair of residential structures, including duplexes, triplexes or fourplexes, must be licensed by the Board of Residential Contractors.
Section 8:913 of that code provides that "[a]fter December 31, 1990, no permit to perform any construction within the scope of this chapter shall be issued to any person, firm, or entity not holding an East Baton Rouge Parish residential contractor's license."[1]
In reliance upon these local ordinances, appellant notes that the City promulgated the residential contractor's code under the authority of The Plan of Government of the Parish of East Baton Rouge and the City of Baton Rouge ("Plan of Government"). Appellant argues that, as the Plan of Government precedes the 1974 Constitution, the city retains broad power to enact legislation based upon powers conferred by the Plan of Government. La. Const. art. VI, § 4.
Rather than granting express powers to local governing authorities, the Louisiana Constitution does grant broad revocable powers to local government. Polk v. Edwards, 626 So.2d 1128, 1142 (La.1993). In fact, just as appellant argues, local governments whose Home Rule Charters predate the 1974 Constitution have a broader power to enact legislation than those local governments whose Home Rule Charters antedate the 1974 Constitution. City of *568 New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690, p. 16 (La.7/5/94), 640 So.2d 237, 243-244 (La. 1994).
Local governments are granted those powers that "are not (a) inconsistent with the 1974 [C]onstitution or (b) denied them by general legislation." See La. Const. art. VI, §§ 4, 5(E), 7(A); City of Shreveport v. Kaufman, 353 So.2d 995, 997 (La.1977). In City of New Orleans, the Louisiana Supreme Court explained that, with respect to valid exercise of local authority, the Louisiana Constitution of 1974 creates two classes of local government. With respect to local governments which are either functioning under a Home Rule Charter adopted after the effective date of the constitution or no Home Rule Charter at all, such a government may only exercise "any power... not denied by general law." La. Const. art. VI, §§ 5(E), 7(A). City of Baton Rouge v. Williams, 95-0308, pp. 3-4 (La.10/16/95), 661 So.2d 445, 448; City of Baton Rouge v. Ross, 94-0695 at 10 (La.4/28/95), 654 So.2d 1311, 1318; City of New Orleans, 93-0690 at 7-8, 640 So.2d at 243-244. A local government operating under a Home Rule Charter pre-dating the 1974 Constitution, however, retains its powers in effect when the constitution is adopted, subject only to the limitation requiring consistency with the constitution. La. Const. art. VI, § 4; Ross, 94-0695 at 11, 654 So.2d at 1318; City of New Orleans, 93-0690 at 12-13, 640 So.2d at 245-246. As such, the legislature no longer possesses an "unqualified power to withdraw, preempt, or overrule a local law that is consistent with the constitution and was enacted pursuant to a constitutionally maintained preexisting home rule charter." City of New Orleans, 93-0690 at 25, 640 So.2d at 251.
However, an absolute grant of power has not been provided to any local government, even those whose Home Rule Charters pre-date the 1974 Constitution. See Polk, 626 So.2d at 1128; City of New Orleans, 93-0690 at 27, 640 So.2d at 252. The legislature's right to exercise police power may not be irrevocably alienated, surrendered, or abridged. Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 289 (La.1986). Further, when necessary to prevent abridgement of a reasonable and valid exercise of the state's police power, the legislature may by a general law adopted pursuant to the police power deny or revoke the initial delegation of home rule powers and functions. Francis v. Morial, 455 So.2d 1168, 1169 (La. 1984).
The constitution provides only two express limitations upon the authority of local governments, which provide that "[n]o local governmental subdivision shall (1) define and provide for the punishment of a felony; or (2) except as provided by law, enact an ordinance governing private or civil relationships." La. Const. art. VI, § 9(A). However, the constitution does further provide that "[n]otwithstanding any provision of this Article, the police power of the state shall never be abridged." La. Const. art. VI, § 9(B). Courts have noted, though, that this language does not summarily cancel the home rule authority provided in earlier sections of the Constitution. Lafourche Parish Council v. Autin, 94-0985, pp. 6-18 (La.12/9/94), 648 So.2d 343, 348-356 (providing an overview of the home rule debate during the Louisiana Constitutional Convention of 1973); City of New Orleans, 93-0690 at 19-28, 640 So.2d at 251-252. Rather, it is considered that this provision "was adopted as a principle of harmonizing the replete home rule powers granted local governments with a basic residuum of the state's power to initiate legislation and regulation necessary to protect and promote the vital interests of its people as a whole." City of New Orleans, 93-0690 at 19-20, 640 So.2d at 249.
Accordingly, City of New Orleans found that principles developed in accommodating individual rights with the state's exercise of its police power are applicable by *569 analogy to the resolution of conflicts between police measures and the constitutionally protected rights of home rule governments. City of New Orleans, 93-0690 at 27-28, 640 So.2d at 252 (citing Board of Commissioners v. Department of Natural Resources, 496 So.2d 281 (La.1986); and Francis, 455 So.2d at 1173). Consequently, when a litigant claims that a home rule municipality's local law abridges the police power of the state:
[the party] must show that the local law conflicts with an act of the state legislature that is necessary to protect the vital interest of the state as a whole. To establish that the conflict actually exists, the litigant must show that the state statute and the ordinance are incompatible and cannot be effectuated in harmony. Further, to demonstrate that the state statute is "necessary" it must be shown that the protection of such state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights.
City of New Orleans, 93-0690 at 27, 640 So.2d at 252.
Here, there can be no doubt that the local law conflicts with a state statute. Section 8:902 of the East Baton Rouge Residential Contractor's Code clearly required that residential contractors acquire a license in East Baton Rouge Parish. In order to ensure compliance, such license was required before a permit allowing work on a particular project was issued to a contractor. The Plan of Government expressly provides for the power to license. § 3.03. Further, Section 1.02 provides:
[The Parish]...shall have all the privileges, powers, and duties, not inconsistent with the provisions of this plan of government, heretofore possessed by East Baton Rouge Parish or the governing body thereof, or which may hereafter be conferred or imposed on parishes on the governing bodies hereof by the constitution and laws of the state.... As such, it seems clear that the Residential Contractor's Code was enacted under the authority of the pre-1974 Plan of Government.
The local ordinance clearly conflicts with La. R.S. 37:2156(F). It reads:
Except for the licenses, fees, and assessments authorized by this Chapter, and except for the occupational license taxes authorized by the constitution and laws of this state, and except for permit fees charged by parishes and municipalities for inspection purposes, and except for licenses required by parishes and municipalities for the purpose of determining the competency of mechanical or plumbing contractors, or both, and electrical contractors, no contractor shall be liable for any fee or license as a condition of engaging in the contracting business.
Id. Appellant argues that there is no conflict between the local building ordinance and general state law. Appellant's argument is based upon the position that La. R.S. 37:2173, rather than La. R.S. 37:2156, applies in this situation. We disagree.
La. R.S. 37:2173 establishes the scope of local examination authority over residential builders. It reads:
[t]his Chapter shall preempt municipal or other local regulatory examination authority over residential builders. In the event that the governing authority or any municipality or parish finds that the state minimum standards do not meet its needs, the local government may provide requirements not less stringent than those specified by the state.
Id. This provision must be read within the context of the state's entire licensing scheme.
The term "residential building contractor" is defined, in part, as:
... any corporation, partnership, or individual who constructs a fixed building or structure for sale for use by another as a residence or who, for a price, commission, fee, wage, or other compensation, undertakes or offers to undertake *570 the construction, or superintending of the construction of any building or structure which is not more than three floors in height, to be used by another as a residence, when the cost of the undertaking exceeds fifty thousand dollars.
La. R.S. 37:2150.1(9). Elsewhere, the state has defined the broader term of contractor as:
... any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes other than a single residential duplex, a single residential triplex, or a single residential fourplex. A construction project which consists of construction of more than two single residential homes, or more than one single residential duplex, triplex, or fourplex, shall be deemed to be a commercial undertaking.
La. R.S. 37:2150.1(4). Also, La. R.S. 37:2150.1(2) states, in part, that "[a] construction project consisting of residential homes where the contractor has a single contract for the construction of more than two homes within the same subdivision shall be deemed a commercial undertaking."
Upon a review of these provisions, we find that firms bidding for each phase of the project in this case are classified as "contractors" performing commercial work, not "residential building contractors", under state law. Each of the three project phases involved work on at least six homes. Also, the cost of each phase of the project was greater than fifty thousand dollars. Further, we note that the term "residential building contractor" seems limited to persons performing actual construction work, while the term "contractor" is applicable to a greater range of work. Compare La. R.S. 37:2150.1(9) with La. R.S. 37:2150.1(4).
Accordingly, the contractors in this case were only subject to state licensing requirements, pursuant to La. R.S. 37:2156(F), as opposed to the greater local authority to establish stricter requirements for residential building contractors. As a result, the parish licensing requirement which applies to all contractors performing work on residential homes, even those not classified as "residential building contractors" under state law, conflicted with the provisions of La. R.S. 37:2156(F), which prohibits municipalities from imposing higher licensing requirements upon most "contractors." Accordingly, we find no error in the trial court's finding that the project was a commercial, rather than residential, project under state law.
Our inquiry does not end here. The conflict between the local ordinance here and state law must be resolved. As discussed above, where a local ordinance is based upon powers established in a pre-1974 Home Rule Charter, a conflicting state law is not preemptive unless it is "necessary to protect the vital interest of the state as a whole." City of New Orleans, 93-0690 at 27, 640 So.2d at 252. We note that, generally, cases upholding the preeminence of local legislation under pre-1974 Home Rule Charter have involved the exercise of historical preservation, taxing, and zoning authority under a pre-1974 Home Rule Charter. St. Charles Gaming Company, Inc. v. Riverboat Gaming Commission, 94-2697 (La.1/17/95), 648 So.2d 1310; City of New Orleans, 93-0690, 640 So.2d at 237. Thus, courts are reconciling conflicts between general statutes and local ordinances that are based upon powers *571 expressly conferred under the constitution. See La. Const. art. VI, §§ 17,26-32.
Furthermore, this court finds helpful the Louisiana Supreme Court's discussion in Williams, 95-0308, 661 So.2d at 445. In Williams, the court found valid a city ordinance providing a greater punishment for an offense than was provided under state law for the same offense. The court's discussion explained:
Further, the legislature has provided the maximum penalty for commission of a misdemeanor. La.Code Crim.P. art. 779; La. R.S. 14:2(4) and (5). It is uncontested that the penalty provided by the City of Baton Rouge does not exceed this limit. There have been decisions by this court which invalidated municipal ordinances that provided greater penalties than the state statute punishing the same crime. Those cases fall into two categories: those in which the municipalities' own home rule charter prohibited a penalty greater than that set in a state statute for the same conduct; and those in which there is a specific state statute which places a ceiling on the penalty a parish or municipality may exact for the prohibited conduct.
Id. at 5, 661 So.2d at 448-449 (footnote omitted). Accordingly, the court found that, because a local ordinance did not provide a higher punishment for a misdemeanor than allowed under state statute, it was not an invalid exercise of local authority. Id. at 7-9, 661 So.2d at 450.
Here, the parish Residential Building Code provisions required licensure of all persons engaged in "the building, construction, installation, rebuilding, remodeling or repair of residential structures...." Section 8:902. As such, it imposed requirements upon the contractors in this case that were beyond the clear prohibition against such greater requirements in La. R.S. 37:2156(F). As part of a comprehensive licensure scheme, La. R.S. 37:2156(F) has established the maximum requirements to which all contractors, except for a small group including those classified as residential building contractors, may be held liable prior to being allowed to perform work. Therefore, application of the parish licensure requirement to the contractors in this case, where their work classified them as "contractors" performing commercial work, rather than "residential building contractors", is an unenforceable encroachment upon the state's police power.
Due to its unenforceability in this case, the local licensing requirement could not be applied against any of the firms seeking to perform work on the project. Accordingly, we find no merit in appellant's assignment of error alleging that the local licensing requirement was applicable in this case. As such, the trial court did not err in its finding that appellant was not entitled to an injunction or mandamus. While the unauthorized use of summary proceedings has been raised in both parties' brief, we note that the trial court's judgment was limited to denial of injunctive relief and mandamus. Thus, we do not reach appellant's assignment of error regarding this issue. Also, because of the ultimate unenforceability of the parish licensing requirement, we do not reach appellant's assignment of error alleging that the licensure requirement was included during the second round of bidding for the work involved in the project.

CONCLUSION
Therefore, based upon review of the record before this court, we affirm the trial court's judgment denying appellant's motion for a preliminary injunction and writ of mandamus. Costs of this appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The court notes that, since this contract dispute arose, the East Baton Rouge Residential Contractor's Code was amended. Discussion of local ordinances under this Code is limited to those versions prior to the subsequent amendments.