WHIPPLE, C.J.
In this public bid dispute, the rejected bidder, Barriere Construction Co., L.L.C. ("Barriere"), appeals a judgment of the trial court denying its request for a preliminary injunction, seeking to enjoin and prevent the award or execution of a contract for a road improvement project to any bidder other than Barriere. For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL BACKGROUND
On June 30, 2017, the Tangipahoa Parish Government (hereinafter referred to as "the parish government") issued an invitation to bid in connection with a project, entitled "Club Deluxe Road Overlay and Widening" (hereinafter referred to as "the project"). The "Information for Bidders" page provided, in pertinent part, that:
1. Receipt and Opening of Bids: The Parish of Tangipahoa (herein called the "Owner"), invites bids on the form attached hereto. All blanks must be appropriately filled in. [...]
* * * *
5. Determination of Unit and Extended Prices: In unit price bids, the total amount bid shall be in the sum of the correct extensions of the unit price bid on each item of work multiplied by the approximate quantity of work shown for the respective item. Each extension shall be carried to one hundredth of a dollar, and the last digit in the extension (or cents' place) shall not be rounded off.
(Emphasis added.)
Attached to the invitation to bid was a document titled "Louisiana Uniform Public Work Bid Form," which included a line for bidders to state their "total base bid." The form further specified that the total base bid was "[f]or all work required by the Bidding Documents (including any and all unit prices designated 'Base Bid' but not alternates) the sum of[.]" Additionally, attached to the invitation to bid was a "Unit Price Form," specifying certain quantities of required materials for the project and specifying certain work that was required for the project, wherein bidders were required to fill in the unit price for such items and the "unit price extension" for such items, defined as quantity times unit price.
*460 On August 25, 2017, the parish government received two timely bids for the project, one from Beverly Construction Co., L.L.C. ("Beverly") and the other from Barriere. Beverly's bid provided that its total base bid amount was $5,456,580.00 and $924,848.00 for the alternate bid, resulting in a bid total of $6,381,428.00. Barriere's bid was $6,400,472.50 for the base bid and $926,735.00 for the alternate bid, resulting in a bid total of $7,327,207.50.
However, on August 28, 2017, Beverly sent a letter to the engineer acting as the parish government's representative for the project, stating that there was a "clerical error" on its bid form, namely, that the total base bid amount of $5,456,580.00 was incorrect. Beverly advised that the total base bid should have read $6,232,566.00, "per [its] units prices,"[1] and that the alternate bid price of $924,848.00 was correct, thus resulting in a bid total of $7,157,414.00. The letter further noted that even after the correction of this clerical error, Beverly's corrected base bid price of $6,232,566.00 still made it the lowest bidder. In support of its position that the parish government should consider the bid amount of $6,232,566.00 as a competitive and successful bid, Beverly cited " LSA-R.S. 38:2212 6(c)[sic]," which provides that "[i]f the public works requires unit price bids and there is a discrepancy between the base bid total and the sum of the extended unit prices, the unit price bid shall govern."See LSA-R.S. 38:2212(B)(6)(c).
Upon learning of Beverly's August 28, 2017 letter, Barriere notified the parish government that it would protest the awarding of the contract to Beverly, based on Barriere's belief that Beverly's bid was irregular and non-responsive. According to the parish government, prior to awarding the contract, the parish government consulted informally with an assistant attorney general and an engineer, and obtained a written legal opinion from the parish's district attorney's office. Thereafter, by resolution dated September 11, 2017, the parish government accepted the bid of Beverly at the stated amount of $6,232,566.00 as the lowest bid and awarded Beverly the contract.
However, prior to the signing of the contract between the parish government and Beverly, Barriere initiated this lawsuit, naming the parish government and Beverly as defendants. Barriere claimed that the project should not be awarded to Beverly because Beverly's bid was irregular and non-responsive, and the parish government had illegally exercised its discretion by modifying Beverly's written bid. Specifically, Barriere argued that Beverly's bid was non-responsive because the "Information for Bidders," as provided by the parish government to respective bidders, states that all blanks must be "appropriately" filled in and that the total amount of the bid shall be the sum of the "correct" extension of the unit prices, and that Beverly had failed to comply with these bid requirements. Barriere sought injunctive relief, seeking to enjoin and prevent the award or execution of the contract for the project to any bidder other than Barriere. Additionally, Barriere asked for an order of mandamus, declaring that Barriere, as the lowest responsible and responsive bidder, be awarded the contract, and further declaring that any contract awarded to, or signed with, any bidder other than Barriere be declared null and void. In the alternative, Barriere sought damages for loss of profits that it would have earned had it been awarded the contract for the project.
*461 The trial court issued a temporary restraining order, enjoining the parish government from awarding a contract for the project to any bidder other than Barriere, and scheduled a hearing on Barriere's request for injunctive relief. Following a hearing on Barriere's request for injunctive relief, the trial court rendered oral reasons for judgment, denying the preliminary injunction. The trial court stated that LSA-R.S. 38:2212(B)(6)(c) was "the factor that swayed" the court, and moreover, in the instant matter, there was not a withdrawal or re-submittal of the bid, but rather a clarification of the bid in accordance with (and as permitted by) subsection (B)(6)(c) of LSA-R.S. 38:2212.
In conformity with its oral reasons for judgment, the trial court signed a judgment on October 10, 2017, denying Barriere's request for a preliminary injunction. From this judgment, Barriere appeals[2] , asserting the following assignments of error:
(1) The trial court erred in concluding that certain mandatory requirements stated in the bidding documents were waivable.
(2) The trial court erred in concluding that the parish government has discretion under Louisiana's Public Bid Law to waive certain mandatory requirements stated in the bidding documents.
(3) The trial court erred in its interpretation of LSA-R.S. 38:2212(B)(6)(c).
APPLICABLE LAW
This case is governed by Louisiana's Public Bid Law, as set forth in LSA-R.S. 38:2211 through 38:2226. The Public Bid Law is a prohibitory law founded on public policy that mandates that all public construction contracts of major significance be let to the lowest responsible bidder. Gilchrist Construction Co. LLC v. East Feliciana Parish Police Jury, 2012-1307 (La. App. 1st Cir. 7/11/13), 122 So.3d 35, 39. The Public Bid Law serves the dual purposes of (1) eliminating fraud and favoritism, and (2) securing free and unrestricted competition among bidders, thereby avoiding undue or excessive costs. Gilchrist, 122 So.3d at 39. The provisions and requirements of the Public Bid Law, as well as those stated in the advertisement for bids and those required on the bid form, shall not be considered as informalities and shall not be waived by any public entity. LSA-R.S. 38:2212(B)(1) (formerly LSA-R.S. 38:2212(A)(l)(b)(i), see Acts 2014, No. 759, § 1). No public work may be done except as provided in the Public Bid Law, and any contravention of its provisions renders the resulting contract null and void. LSA-R.S. 38:2220. In this sense, the law severely curtails the discretion of the public entity, thereby ensuring a level playing field for all bidders and a fair and equitable means by which competing bids might be evaluated to determine the lowest responsible and responsive bidder. One bidder cannot be provided *462 an advantage over another bidder due to a waiver. Gilchrist, 122 So.3d at 39.
ANALYSIS
The thrust of Barriere's assignments of error is that the trial court erred in finding that LSA-R.S. 38:2212(B)(6)(c) absolves Beverly for the alleged defects in its bid and allows Beverly to escape the well-established jurisprudential and legislative rule that a public entity may not waive the bid requirements, regardless of whether a requirement is substantive or non-substantive.[3] Barriere contends that under the facts of this case, subsection (B)(6)(c) of LSA-R.S. 38:2212, which states that the unit price bid shall govern if there is a discrepancy between the base bid total and the sum of the extended unit prices, conflicts with the express language of subsection (B)(1), which, as previously stated, provides that the provisions and requirements of the Public Works Act and those stated in the bidding documents shall not be waived by any entity. Accordingly, relying on the well-established rule of statutory construction that "all laws pertaining to the same subject matter must be interpreted in pari materia, or in reference to each other," Barriere argues that subsection (B)(6)(c), which, as noted above, specifies how to resolve a discrepancy between the base bid total and the sum of the extended unit prices, applies only when the bidding documents do not require that the bids be free of calculation errors, as the bidding document herein required. Barriere also argues that subsections (C) and (D) of LSA-R.S. 38:2214 set forth the recourse available to bidders who submit a bid with calculation errors, and argues that the trial court's ruling herein completely disregards these statutory provisions and renders them meaningless and without legal effect.[4] While acknowledging that it has no reason to believe that Beverly *463 intentionally miscalculated its bid, Barriere avers that as a consequence of the trial court's ruling, a bidder could make substantial post-bid modifications and thereby "rig the system and guarantee it will be awarded the work, regardless of what others bidders do." We disagree.
As noted above, subsection (B)(6)(c) of LSA-R.S. 38:2212 specifically provides that "[i]f the public works requires unit price bids and there is a discrepancy between the base bid total and the sum of the extended unit prices, the unit price bid shall govern." This subsection is a result of a 2014 legislative change to the Public Works Act, and its interpretation presents a res nova issue for this court. See Acts 2014, No. 759, § 1.
According to the basic rules of statutory construction, laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. Where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Black v. St. Tammany Parish Hospital, 2008-2670 (La. 11/6/09), 25 So.3d 711, 717-718. Applying these precepts herein, we find that subsection (B)(6)(c) of LSA-R.S. 38:2212 specifically addresses the issue presented in the instant appeal, i.e., in the case of a discrepancy between the stated base bid total and the sum of the extended unit prices, the unit price bid governs. Further, the legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law. Hamp's Construction, 924 So.2d at 110. Accordingly, as pertinent herein, the legislature is presumed to have enacted subsection (B)(6)(c) of LSA-R.S. 38:2212 fully cognizant of the language of subsection (B)(1) (formerly subsection (A)(1)(b) ) of the same statute and LSA-R.S. 38:2214(C) and (D). Indeed, the legislature could have provided language in subsection (B)(6)(c) of LSA-R.S. 38:2212 stating that in the event of a conflict, subsection (B)(1) or LSA-R.S. 38:2214(C) and (D) would apply and be determinative. However, there is an absence of such language. Accordingly, inasmuch as subsection (B)(6)(c) of LSA-R.S. 38:2212 is specifically directed to the matter at issue in the instant appeal and is the later expression of legislative will, we conclude that the legislature has impliedly expressed an intention that this subsection is controlling in the event of a conflict between this subsection and subsection (B)(1) of the same statute and/or LSA-R.S. 38:2214(C) and (D).
Moreover, we have carefully reviewed the cases relied on by Barriere in support of its argument, wherein the Louisiana Supreme Court and this court have stated, in sum, that when a public entity elects to place certain requirements in its advertisements for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later late. See Hamp's Construction, 924 So.2d at 109 ; Phylway Construction, LLC v. Terrebonne Parish Consolidated Government, 2013-1589 (La. App. 1st Cir. 9/5/14), 153 So.3d 516, 521, writ denied, 2014-2677 (La. 3/13/15), 161 So.3d 642 ;
*464 Barriere Construction Co., LLC v. Terrebonne Parish Consolidated Government, 1999-2271 (La. App. 1st Cir. 2/18/00), 754 So.2d 1123, 1127, writ denied, 2000-0801 (La. 5/5/00), 761 So.2d 546. The statutory basis for the courts' reasoning and findings in these cases is subsection (B)(1) of LSA-R.S. 38:2212 (formerly subsection (A)(1)(b) of LSA-R.S. 38:2212 ), which states that the provisions in the bidding documents shall not be waived by any entity. Based on our conclusion above that subsection (B)(6)(c) of LSA-R.S. 38:2212, as the latest and more specific provision, governs the instant case in the event of a conflict with subsection (B)(1), we find that the cases cited by Barriere are distinguishable from the facts presented in the instant appeal.
In Phylway, this court noted that an "entity is bound by [its] advertised requirements and bid form specifications in addition to the statutory requirements and may not choose to waive them at a later date[, and this reasoning is extended] to include requirements and instructions in advertisements and bid forms that may exceed what is required by the Public Bid Law, as long as the statutory requirements are also met." (Emphasis added.) Phylway, 153 So.3d at 521. However, under the interpretation urged by Barriere, the bidding instructions at issue conflict with, rather than merely exceed, the statutory requirements and procedures set forth in the Public Bid Law. Cf. Phylway, 153 So.3d at 521. Indeed, under the interpretation urged by Barriere, the statutory provisions of LSA-R.S. 38:2212(B)(6)(c) would be abrogated or rendered meaningless to the extent that § 1, and § 5, in particular, of the "Invitation for Bidders" mandate that the bid contain the "correct" sum of the extensions, regardless of LSA-R.S. 38:2212(B)(6)(c), which inherently recognizes that there may be clerical errors of this type and provides a special rule for determining the "correct" bid amount and whether the bid qualifies as the lowest. In sum, to accept Barriere's interpretation would render this latest statutory enactment and expression of legislative will utterly meaningless and superfluous.
Last, we note that the individual extended unit prices, the sum of which were the basis of Beverly's clarified bid amount, were submitted by Beverly when it initially submitted its bid and prior to Beverly learning of the other competitive bidder's bid amount. Accordingly, in the instant case, contrary to Barriere's assertion, allowing and applying this post-bid clarification in accordance with LSA-R.S. 38:2212(B)(6)(c) will not result in the absurd result that a bidder is able to "rig the system, after learning of the other bid amounts, to guarantee that it will be awarded the work."
Under the facts of this case, we do not find that Beverly's post-bid correspondence with the parish government was a waiver of, or non-compliance with, the bid requirements in violation of Louisiana's Public Bid Law. Rather, this post-bid correspondence was a valid request for the parish government to recognize that Beverly's correct bid amount was the corrected sum of its extended unit prices, as the parish government was required to do pursuant to LSA-R.S. 38:2212(B)(6)(c). Accordingly, we find no error by the trial court in its denial of Barriere's request for injunctive relief.
CONCLUSION
For the above reasons, the October 10, 2017 judgment of the trial court, denying the preliminary injunction sought by Barrier, is hereby affirmed. All costs of this appeal are to be paid by appellant, Barriere Construction Co., L.L.C.
AFFIRMED.
McClendon, J. concurs.

To clarify, the sum of the unit price extensions listed by Beverly on its Unit Price Form, as attached to its initially submitted bid, undisputedly totaled $6,232,566.00.

We note that an appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction. LSA-C.C.P. art. 3612. Moreover, we note that although injunctive relief may no longer be available in the instant case as the disputed contract has been awarded and work has commenced, Barriere, as the aggrieved bidder, may be entitled to damages, and therefore, the propriety of the awarding of the contract is not mooted by the unavailability of injunctive relief in this public bid dispute. See State Machinery & Equipment Sales, Inc. v. Iberville Parish Council, 2005-2240 (La. App. 1st Cir. 12/28/06), 952 So.2d 77, 84 ; Merritt McDonald Const., Inc. v. Parish of East Baton Rouge, 98-1032 (La. App. 1st Cir. 5/14/99), 742 So.2d 564, 567, writ denied, 99-3195 (La. 1/14/00), 753 So.2d 218.

See Hamp's Const., L.L.C. v. City of New Orleans, 2005-0489 (La. 2/22/06), 924 So.2d 104, 110-111, wherein the Supreme Court noted that:
In accordance with the express and unambiguous language of La. R.S. 38:2212A(1)(b), any requirements of the Public Bid Law, any requirements stated in the advertisement for bid, and any requirements required on the bid form shall not be waived by the public entity. The public entity does not have the discretion to determine, after bids have been submitted, whether a requirement is substantive or non-substantive, waivable or non-waivable. Once the public entity establishes a requirement, that requirement must be uniformly followed by all bidders.

Subsections (C) and (D) of LSA-R.S. 38:2214 provide:
C. Bids containing patently obvious, unintentional, and substantial mechanical, clerical, or mathematical errors, or errors of unintentional omission of a substantial quantity of work, labor, material, or services made directly in the compilation of the bid, may be withdrawn by the contractor if clear and convincing sworn, written evidence of such errors is furnished to the public entity within forty-eight hours of the bid opening excluding Saturdays, Sundays, and legal holidays. Such errors must be clearly shown by objective evidence drawn from inspection of the original work papers, documents, or materials used in the preparation of the bid sought to be withdrawn. If the public entity determines that the error is a patently obvious mechanical, clerical, or mathematical error, or unintentional omission of a substantial quantity of work, labor, material, or services, as opposed to a judgment error, and that the bid was submitted in good faith it shall accept the withdrawal and return the bid security to the contractor.
D. (1) A contractor who attempts to withdraw a bid under the provisions of this Section shall not be allowed to resubmit a bid on the project. If the bid withdrawn is the lowest bid, the next lowest bid may be accepted. If all bids are rejected no withdrawal of the bid which would result in the award of the contract on another bid of the same bidder, his partner, or to a corporation or business venture owned by or in which he has an interest shall be permitted. No bidder who is permitted to withdraw a bid shall supply any material or labor to, or perform any subcontract work agreement for, any person to whom a contract or subcontract is awarded in the performance of the contract for which the withdrawn bid was submitted.