# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

**2023 CA 1339**

TERREBONNE PARISH SCHOOL BOARD

VERSUS

GROUP CONTRACTORS, LLC

Judgment Rendered: __JAN 3 1 2025__

\* \* \* \* \* \*

On Appeal from the Thirty-Second Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket No. 195980

Honorable Randall L. Bethancourt, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Stanwood R. Duval<br>Kathryn W. Richard<br>April A. Trahan<br>Harley M. Papa<br>Houma, Louisiana | Counsel for Plaintiff/Appellee<br>Terrebonne Parish School Board |
| Edward J. Laperouse, II<br>Jason A. Bonaventure<br>Baton Rouge, Louisiana | Counsel for Intervenor/Appellee<br>Edward J. Laperouse Metal Works, Inc. |
| Murphy J. Foster, III<br>Jacob E. Roussel<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Group Contractors, LLC |

\* \* \* \* \* \*

**BEFORE:  McCLENDON, C.J., HESTER AND MILLER, JJ.**

Hester, J. concurs with reasons
Miller, J. Concurring for the reasons assigned by Judge Hester
by CHH

**McCLENDON, C.J.**

In this public bid dispute, a contractor appeals the trial court's judgment that declared a contract between it and the school board to be null and void. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On March 2, 2023, the Terrebonne Parish School Board (TPSB) filed a Petition for Declaratory Judgment against Group Contractors, LLC (Group), asking the trial court to declare a contract between TPSB and Group as either valid or null and void under Louisiana law. The contract at issue involves the replacement of the roof at Oaklawn Middle School in Houma, Louisiana (the Project) following Hurricane Ida. On December 20, 2022, TPSB submitted a request for bids, and five bids were received by TPSB between December of 2022 and January of 2023. On January 17, 2023, TPSB opened the bids for the Project. After disqualifying the first two low bidders due to non-responsiveness, TPSB awarded the bid to Group on January 24, 2023.[1] TPSB and Group signed the written contract for the Project on February 1, 2023. Thereafter, Edward J. Laperouse Metal Works, Inc. (Laperouse), the next lowest bidder, sent written objections to TPSB, asserting that Group failed to follow certain requirements of the bidding documents.

In response to TPSB's Petition for Declaratory Judgment, Laperouse filed a Petition for Intervention, Preliminary Injunction, Permanent Injunction, Mandamus Relief and Declaratory Judgment, naming TPSB and Dr. MayBelle N. Trahan, in her capacity as the President of TPSB, as defendants. Therein, Laperouse asserted that TPSB's actions of entering into a contract with Group before post-bid submissions were provided (or due) constituted an inappropriate waiver of the requirements of the Public Bid Law and of the Project documents. Laperouse also alleged that Group's post-bid submission of documentation regarding a nonauthorized and nonapproved roofing system failed to meet the requirements of the bidding documents and that TPSB's waiver of the requirement of an authorized or approved roofing system was a violation of the Public

---

[1] The first lowest bidder was declared nonresponsive for failing to use the Louisiana Public Works Uniform Bid Form and Unit Price Form, and the next lowest bidder was declared nonresponsive for not having a Louisiana Building Construction license.

2

Bid Law. Laperouse prayed for judgment declaring the contract null and void and declaring Laperouse to be the lowest responsible and responsive bidder.

Thereafter, Group answered TPSB's petition, requesting that the trial court declare the contract valid. Following a hearing on Laperouse's motion for a preliminary injunction, which was denied, the trial court set the declaratory judgment trial for August 1, 2023. At the outset of the trial, a Joint Stipulation of Facts Not in Dispute, signed by all the parties, was introduced into evidence. Attached to the Joint Stipulation were several exhibits, which included the Bid Package (with the exception of the plans) and Addendum No. 1, the Bid Tabulation Sheet, the Contract, TPSB's Special Session Meeting Minutes for January 24, 2023, Laperouse's public records request and responses thereto, and certain other documents, emails, and correspondence.

Jessica Richard, the secretary/treasurer and a minority owner of Laperouse, was the only witness to testify at the bench trial. After Ms. Richard's testimony and following argument by counsel, the trial court took the matter under advisement. On August 21, 2023, the trial court signed its judgment, as well as separate Reasons for Judgment. The trial court declared that the contract between TPSB and Group dated February 1, 2023, was null and void.[2] The trial court also ordered that Laperouse be given an adequate opportunity to conform to the bidding instructions as the next apparent lowest bidder and that Laperouse be awarded the contract if it produced all documentation in the requisite period of time as required in the bidding instructions and under the Public Bid Law.[3]

Group appealed and assigned the following as error:

1. The trial court erred in ruling that provisions of the bidding documents regarding the furnishing of a post-bid submittal "prior to award of the contract" contained a legally valid bid requirement that could serve as a basis for rendering null and void the construction contract entered into between TPSB and Group; and

2. The trial court erred in ruling that any deadline for the post-bid submittal at issue was applicable to Group as the third lowest bidder.

---

[2] We note that although the trial court's judgment states that the contract was dated February 6, 2023, the contract was dated February 1, 2023.

[3] In its appellate brief, Laperouse states that it complied with the bid instruction requirements and that on September 20, 2023, the contract for the Project was awarded by TPSB to Laperouse, who began working on the Project.

## DISCUSSION

Louisiana's Public Bid Law is set forth in LSA-R.S. 38:2211, *et seq.* The Public Bid Law is a prohibitory law founded on public policy. **Barriere Construction Co., L.L.C. v. Parish of Tangipahoa**, 2018-0279 (La.App. 1 Cir. 9/24/18), 259 So.3d 458, 461. Louisiana Revised Statutes 38:2212(A)(1)(a) mandates that all public work exceeding the defined contract limit as set forth in LSA-R.S. 38:2212(C)(1) be advertised and let by contract to the "lowest responsible and responsive bidder."[4]

The Public Bid Law serves the dual purposes of eliminating fraud and favoritism and securing free and unrestricted competition among bidders, thereby avoiding undue or excessive costs. **Lathan v. City of Gonzales through Arceneaux**, 2021-0825 (La.App. 1 Cir. 2/25/22), 340 So.3d 1146, 1149. A political entity has no authority to take any action that is inconsistent with Louisiana's Public Bid Law. **Hamp's Construction, L.L.C. v. City of New Orleans**, 2005-0489 (La. 2/22/06), 924 So.2d 104, 107. The provisions and requirements of the Public Bid Law, as well as those stated in the bidding documents, shall not be considered as informalities and shall not be waived by any public entity.[5] LSA-R.S. 38:2212(B)(1). No public work may be done except as provided in the Public Bid Law, and any contravention of its provisions renders the resulting contract null and void. LSA-R.S. 38:2220; **Barriere**, 259 So.3d at 461.

In this sense, the Public Bid Law severely curtails the discretion of the public entity, thereby ensuring a level playing field for all bidders and a fair and equitable means by which competing bids might be evaluated to determine the lowest responsible and responsive bidder. **Leblanc Marine, L.L.C. v. Division of Administration, Office of Facility Planning & Control**, 2019-0053 (La. 10/22/19), 286 So.3d 391, 396. One bidder cannot be provided an advantage over another bidder due to a waiver. **Lathan**, 340 So.3d at 1149.

---

[4] As defined in LSA-R.S. 38:2211(A)(13), "public work" refers to the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. "Public entity" means and includes any political subdivision of the state, including but not limited to any political subdivision as defined in Article VI Section 44 of the Constitution of Louisiana. LSA-R.S. 38:2211(A)(12). There is no dispute that TPSB is a public entity and that the Project was a public work project.

[5] "Bidding documents" are defined in LSA-R.S. 38:2211(A)(2) as "the bid notice, plans and specifications, bid form, bidding instructions, addenda, special provisions, and all other written instruments prepared by or on behalf of a public entity for use by prospective bidders on a public contract."

Further, the case law has recognized that a public entity may "include requirements and instructions in advertisements and bid forms that may exceed what is required by the Public Bid Law, as long as the statutory requirements are also met." **Leblanc Marine, L.L.C.**, 286 So.3d at 396; **Phylway Const., LLC v. Terrebonne Parish Consol. Government**, 2013-1589 (La.App. 1 Cir. 9/5/14), 153 So. 3d 516, 521, writ denied, 2014-2677 (La. 3/13/15), 161 So.3d 642.[6] However, bidding instructions that conflict with, rather than merely exceed, the statutory requirements and procedures set forth in the Public Bid Law are not valid. **Leblanc Marine, L.L.C.**, 286 So.3d at 396.

Additionally, the supreme court has explained that the Public Bid Law could not be more clear in stating that a bidder's failure to comply with every detail can invalidate the bid and that the consequences of such defects should be on the bidder who prepares the bid. **Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority**, 2004-0211 (La. 3/18/04), 867 So.2d 651, 658, citing, **Barriere Construction Co., L.L.C. v. Terrebonne Parish Consolidated Government**, 99-2271 (La.App. 1 Cir. 2/18/00), 754 So.2d 1123, 1127, writ denied, 2000-0801 (La. 5/5/00), 761 So.2d 546.

With these precepts in mind, we now turn to Group's assignments of error. Initially, Group argues that the trial court erred in ruling that the provision of the bidding instructions regarding the furnishing of a post-bid submittal "prior to award of the contract" contained a legally valid bidding requirement. Therefore, according to Group, this invalid bidding requirement could not have served as the basis for rendering null and void the construction contract it entered into with TPSB.

Pertinent to Group's assignment of error is Article 6 of the bidding instructions, titled "Post Bid Information." Section 6.3.6 of Article 6 provides:

> The lowest responsible bidder shall submit to the Architect and the Owner prior to award of the contract a letter from the manufacturer that the manufacturer will issue the roof system guarantee based on the specified

---

[6] In **Phylway Const., LLC**, 153 So.3d at 521, this court stated:

> [W]hen a public entity, such as the Parish in this case, elects to place certain requirements that differ from statutory requirements in its advertisements for bids and on its bid forms, then that entity is bound by those advertised requirements and bid form specifications in addition to the statutory requirements, and may not choose to waive them at a later date. We extend this reasoning to include requirements and instructions in advertisements and bid forms that may exceed what is required by the Public Bid Law, as long as the statutory requirements are also met.

roof system and include the name of the applicator acceptable to the manufacturer for installing the specified roof system. This manufacturer shall be one that has received prior approval or is named in the specifications.

Group contends that this bidding instruction, requiring the submission of the manufacturer letter "prior to award of the contract", is facially invalid as it conflicts with the Public Bid Law and cannot be the basis for a public entity to disqualify an otherwise responsive bidder. Accordingly, we must first determine whether this specific bidding instruction was in conflict with the requirements of the Public Bid Law.

Louisiana Revised Statutes 38:2212(A)(1)(a) provides, in pertinent part:

> All public work exceeding the contract limit as defined in this Section, including labor and materials, to be done by a public entity shall be advertised and let by contract to the lowest responsible and responsive bidder who bid according to the bidding documents as advertised, and no such public work shall be done except as provided in this Part.

The Public Bid Law further provides that "[t]he provisions and requirements of this Section and those stated in the bidding documents shall not be waived by any entity." LSA-R.S. 38:2212(B)(1). Thereafter, LSA-R.S. 38:2212(B)(2) contains an exclusive listing of the documents that a public entity may require at the time of bidding.[7] Additionally, LSA-R.S. 38:2212(B)(3)(a), provides, in pertinent part:

> The bidding documents shall not require any bidder, other than the apparent low bidder, to furnish any other information or documentation, including the Attestation Affidavit and the E-Verification Form, any sooner than ten days after the date bids are opened; however, the apparent low bidder may submit such information or documentation at any time prior to the expiration of the ten-day period. If the apparent low bidder does not submit the proper information or documentation as required by the bidding documents within the ten-day period, such bidder shall be declared non-responsive, and the public entity may award the bid to the next lowest

---

[7] Louisiana Revised Statutes 38:2212(B)(2) provides:

> Any public entity advertising for public work shall use only the Louisiana Uniform Bid Form as promulgated in accordance with the Administrative Procedure Act by the division of administration, office of facility planning and control. The bidding documents shall require only the following information and documentation to be submitted by a bidder at the time designated in the advertisement for bid opening: Bid Security or Bid Bond; Acknowledgment of Addenda; Base Bid; Alternates; Signature of Bidder; Name, Title, and Address of Bidder; Name of Firm or Joint Venture; Corporate Resolution or written evidence of the authority of the person signing the bid; and Louisiana Contractors License Number, and on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth including a description for each unit; however, unit prices shall not be utilized for the construction of building projects, unless the unit prices and their extensions are incorporated into the base bid or alternates. If a public entity adds any additional requirements for information, unless mandated by state or federal requirements, the requirements shall be void and not considered in the award of the contract. Any timely change by a bidder to the bid prior to submission of the bid shall be scratched through and initialed by the bidder or the person who submits the bid. The change as initialed shall be binding.

6

bidder, and afford the next lowest bidder not less than ten days from the date the apparent low bidder is declared non-responsive, to submit the proper information and documentation as required by the bidding documents, and may continue such process until the public entity either determines the low bidder or rejects all bids. The ten-day period shall not be altered or waived by any public entity....

Group contends that because Section 6.3.6 requires the roofing manufacturer to submit the roof system guarantee "prior to award of the contract", it creates a shorter timeline than that established in LSA-R.S. 38:2212(B)(3)(a) of the Public Bid Law.[8] More specifically, according to Group, any bidding instruction that implies a deadline earlier than ten days for bidders, who are not the apparent low bidder, is in conflict with the requirements of the Public Bid Law and is invalid as a matter of law.

In this matter, TPSB awarded the Project to Group seven days after the bid opening. Group maintains that the bidding instruction at issue effectively shortened the time for Group to submit the manufacturer letter to seven days, in contravention of LSA-R.S. 38:2212(B)(3)(a) of the Public Bid Law. Therefore, according to Group, Section 6.3.6 of the bidding instructions was invalid.

However, a careful review of Section 6.3.6 shows that the bidding instruction, on its face, does not violate the Public Bid Law. Section 6.3.6 does not derogate from the requirement under the Public Bid Law that "[t]he bidding documents shall not require any bidder, other than the apparent low bidder, to furnish any other information or documentation ... any sooner than ten days after the date bids are opened."[9] LSA-R.S. 38:2212(B)(3)(a). The plain language of Section 6.3.6 required the lowest responsible bidder to submit to the Architect and the Owner prior to the award of the contract a letter from the manufacturer guaranteeing the roof system and including the name of the

---

[8] Group also refers to LSA-R.S. 38:2215(A)(1), which provides that "[a] public entity shall act not later than forty-five calendar days after the date of opening bids to award such public works contract to the lowest responsible and responsive bidder or to reject all bids." Thus, according to Group, the language of Section 6.3.6 also created an unenforceable fluid deadline, rather than a fixed deadline, for the roof manufacturer guarantee, as the deadline could have been as long as forty-five days or as short as immediately after the bid opening.

[9] Section 6.1 directed bidders to "[r]efer to **List of Required Documents** for other items required to be submitted by the apparent low bidder within ten (10) days after bid opening." Section 6.3.1 provides:

> Within 24 hours after bids are opened, the Contractor identified as the apparent low bidder shall make the following submittals to the Architect: A tentative list of all subcontractors or other persons or organizations (including those who are to furnish materials or equipment fabricated to special design) proposed for principal portions of the work, as well as the proposed superintendent. Also provide a designation of the work to be performed by the Contractor with his own forces.

installer of the specified roof system. Section 6.3.6 of the bidding instructions did not contain any language shortening the time period for the required post-bid roofing manufacturer submittals. Pursuant to the bidding instructions, these documents were required to be submitted after bid opening and prior to the award of the contract.[10]

Again, nothing in Section 6.3.6 of the bidding instructions mandates the roofing manufacturer guarantee to be submitted within seven days of the bid opening. Rather, Section 6.3.6 merely required that the guarantee be submitted to the architect and owner prior to the award of the contract, and Group had ten days to do so. TPSB's decision to award the contract to Group at its special meeting on January 24, 2023, only seven days after the opening of the bids for the Project, did not make the bidding instruction itself invalid as a matter of law, and we cannot say that Section 6.3.6 of the bidding instructions conflicted with the requirements of the Public Bid Law.[11]

In its second assignment of error, Group argues that even if Section 6.3.6 of the bidding instructions required compliance with the statutory ten-day deadline found in LSA-R.S. 38:2212(B)(3)(a), such requirement was not applicable to Group. LSA-R.S. 38:2212(B)(3)(a) prohibits a public entity from requiring a bidder who is not the apparent low bidder to furnish post-bid submittals any sooner than ten days after the bids are opened.[12] Group suggests that Section 6.2 of the bidding instructions is inapplicable to it, as it was the third lowest bidder and not the apparent low bidder.

The deadline in the bidding instructions for any post-bid submittals is found in Section 6.2, which mirror the requirements of LSA-R.S. 38:2212(B)(3)(a). Section 6.2 provides:

> The apparent low Bidder has a maximum of ten (10) days from the bid opening to produce any required post bid submittals. If the apparent low Bidder does not submit the proper information or documentation as required by the Bid documents within the ten-day period, such Bidder shall be declared non-responsive, which will result in automatic disqualification of bid.

---

[10] The Project Specifications referencing the roofing manufacturer submittals are found in the section titled "Submittals Prior to Contract Award."

[11] We later discuss TPSB's decision to award the contract prior to the ten days given to Group to submit the roofing manufacturer letter.

[12] Nevertheless, LSA-R.S. 38:2212(B)(3)(a) allows the apparent low bidder to furnish any other information or documentation at any time prior to the expiration of the ten-day period.

We disagree with Group's argument that it was not the apparent low bidder and that Section 6.2 of the bidding instructions was inapplicable to Group. "Apparent low bidder" is not defined in the Public Bid Law. However, on the day the bids were opened, the two lowest bidders were declared nonresponsive, and TPSB could not consider those bids. Therefore, Group became the apparent low bidder. See **Hamp's Construction, L.L.C.**, 924 So.2d at 111 n.4 ("it is our opinion that [a public authority] may not consider those bids which omitted [a document] required in the contract documents, including the bid of the apparent low bidder"); **Lathan Construction, LLC v. Webster Parish School Board Through Kennon**, 53,873 (La.App. 2 Cir. 4/14/21), 317 So.3d 881, 885 ("[t]o be entitled to the rights and privileges afforded in the Public Bid Law, there must be a qualifying bid submitted. Nonresponsive bidders are not permitted to seek enforcement of Public Bid Law, as they have failed to meet the threshold requirement of submitting a responsive bid").[13]

In this matter, the lowest bidder and the second lowest bidder were declared nonresponsive according to the Joint Stipulation of Facts Not in Dispute. Thus, Group became the apparent low bidder that was responsive to the bidding instructions. Therefore, we find Section 6.2 of the bidding instructions applicable to Group, and Group had a maximum of ten days from the bid opening to produce "any required post bid submittals."

Having found that Section 6.3.6 of the bidding instructions did not conflict with the requirements of the Public Bid Law and that Section 6.2 of the bidding instructions was applicable to Group, we now determine whether Group violated the bidding instructions. TPSB opened the bids for the Project on January 17, 2023. On January 24, 2023, TPSB awarded the contract to Group, seven days after the opening of the bids. On January 31, 2023, Group submitted a manufacturer letter from Soprema. However, the Soprema

---

[13] In **Lamar Contractors, L.L.C. v. City of New Orleans**, 2021-0489 (La.App. 4 Cir. 12/15/21), 334 So.3d 870, 873, the fourth circuit explained that the determination of whether a bidder is responsive is purely ministerial and that the public entity must ensure that the bidder has met each and every post-bid requirement and has no ability to waive discrepancies. LSA-R.S. 38:2212(B)(1). The fourth circuit continued that "[a]n apparent low bidder is non-responsive when it 'does not submit the proper information or documentation as required by the bidding documents' within ten (10) days after the bid is opened," citing LSA-R.S. 38:2212(B)(3)(a), and that in such case, the public entity may award the contract to the next apparent low bidder that is responsive. **Lamar Contractors, L.L.C.**, 334 So.3d at 873.

roofing system was a nonauthorized and nonapproved roofing system. The contract between TPSB and Group was signed on February 1, 2023. Then, on February 6, 2023, twenty days after the opening of the bids and thirteen days after the contract was awarded to Group, Group submitted a manufacturer letter from Garland Company, Inc. (Garland), an approved roofing system.

Laperouse argued that Group did not seek approval of the use of the Soprema roofing system prior to its bid submission or anytime thereafter. Further, Laperouse asserted that the Soprema roofing system was a non-equivalent and cheaper product than the pre-approved roofing systems listed in the Project Specifications.[14] Additionally, this original manufacturer submittal was not made until January 31, 2023, seven days after the award of the contract to Group on January 24, 2023, and seventeen days after the bid opening. Laperouse asserted that Group's failure to timely submit the manufacturer's guarantee for the specified roof system in accordance with Section 6.3.6 of the bidding instructions invalidated Group's bid.[15] After Laperouse's objection to Group's award of the contract, Group tried to move forward with the Project using the Garland system, producing a letter from the manufacturer of the Garland system on February 6, 2023.[16]

However, Group did not provide the required letter from an approved roofing manufacturer until February 6, 2023, twenty days after the opening of the bids and thirteen days after the contract was awarded to Group. Section 6.2 of the bidding instructions unambiguously provided the apparent low bidder ten days from the bid opening to produce any required post-bid submittals, and Group failed to comply with the ten-day requirement of Section 6.2, making it a nonresponsive bidder and resulting in the automatic disqualification of the bid.

---

[14] Laperouse contended that pursuant to the requirements of the Public Bid Law and the bidding instructions, requests for substitutions regarding the roofing system needed to be made at least seven days prior to the bid opening, which would have to be approved by the Project architect in an addendum. See LSA-R.S. 38:2212.1(C) and Sections 3.3.1-3.3.3 of the bidding instructions.

[15] Laperouse also argued that Group's untimely post-bid roofing manufacturer submittals were non-responsive and did not comply with the Project Specifications or Section 6.3.6 of the bidding instructions.

[16] The Project Specifications approved roofing systems by Siplast, Inc., Tremco Roofing and Weatherproofing an RPM Company, and Garland.

Further, even if not considered the apparent low bidder, Group failed to comply with LSA-R.S. 38:2212(B)(3)(a) as the next lowest bidder, since it did not provide the letter from an approved roofing manufacturer within ten days from when it was awarded the contract on January 24, 2023. As the next lowest bidder, Group had "not less than ten days" from the date the first low bidder and the second low bidder were declared nonresponsive. See LSA-R.S. 38:2212(B)(3)(a). Group did not provide a letter from an approved manufacturer until February 6, 2023, which was more than ten days after the first low bidder and the second low bidder were declared nonresponsive. Therefore, Group failed to comply with the requirements of LSA-R.S. 38:2212(B)(3)(a), which made it a nonresponsive bidder.

TPSB awarded the contract to Group seven days after the bid opening, before receiving the post-bid roofing manufacturer documents. This was before the ten days allowed for "any required post bid submittals" pursuant to Section 6.2 of the bidding documents and given by LSA-R.S. 38:2212(B)(3)(a). The provisions and requirements of the Public Bid Law and those stated in the bidding documents shall not be waived by any entity. LSA-R.S. 38:2212(B)(1). Therefore, even if unintended, TPSB's award of the contract to Group before receiving the roofing system guarantee from the manufacturer was in violation of Section 6.3.6 of the bidding instructions and constituted a waiver of same. Further, even if we consider Group as the next lowest bidder, as opposed to the apparent low bidder, Group failed to submit the required post-bid manufacturer letter within the ten days as provided by LSA-R.S. 38:2212(B)(3)(a), and TPSB effectively waived this requirement of the Public Bid Law as well. Accordingly, the trial court did not err in rendering the contract between TPSB and Group null and void.[17]

## CONCLUSION

For the above reasons, we affirm the August 21, 2023 judgment of the trial court, declaring the contract between Terrebonne Parish School Board and Group Contractors,

---

[17] In its Reasons for Judgment, the trial court stated that "TPSB's seeming waiver of the production of the manufacturer's letter prior to awarding the contract, or the alternative waiver of the ten-day post-bid submittal, were violations and the contract between TPSB and Group signed on February 6, 2023, is rendered null and void."

LLC, signed on January 24, 2023, null and void. All costs of this appeal are assessed to Group Contactors, LLC.

**AFFIRMED.**

# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT
## 2023 CA 1339

## TERREBONNE PARISH SCHOOL BOARD

## VERSUS

## GROUP CONTRACTORS, LLC

CHH

·····························································

**Hester, J., concurring.**

I respectfully concur. Regardless of whether Group is considered the "apparent low bidder" or the "next lowest bidder" under La. R.S. 38:2212(B)(3)(a), Group was given ten days by contract and La. R.S. 38:2212(B)(3)(a) to submit the other proper information or documentation as required by the bidding documents. Group failed to do so, which made Group a nonresponsive bidder.